COMMONWEALTH *vs.* ESSIE JOHNSON.

No. 93-P-964.

Suffolk. February 28, 1994. - April 11, 1994.

Present: ARMSTRONG, KASS, & SMITH, JJ.

*Search and Seizure*, Arrest, Protective frisk, Threshold police inquiry. *Constitutional Law*, Search and seizure. *Idle and Disorderly Person.*

There was no error in the denial of a criminal defendant's motion to suppress a handgun discovered during a police officer's pat-down of the defendant's purse where, in the situation presented to the officer, he could have reasonably apprehended that the defendant was not wholly in control of herself and that condition, together with a report of a known citizen that the defendant was carrying a gun, presented a danger to public safety. [337-338]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on September 10, 1991.

On appeal to the jury session of the Dorchester Division a motion to suppress evidence was heard by *Sarah B. Singer*, J., and the case was tried before *R. Peter Anderson*, J.

*Arthur N. Cole* for the defendant.

*John P. Zanini*, Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. Appealing from her conviction of unlawful possession of a handgun, G. L. c. 269, § 10(*a*), the defendant argues that the judge erred in denying a motion to suppress the handgun as the product of a search made without probable cause. As found by the judge, the facts were that a Boston police officer on patrol was informed by a neighborhood person known to him that a woman down the street was carrying a handgun in her black purse. She pointed the woman out, and the officer drove his cruiser down the street. He got out and approached the defendant, who was carrying a black handbag and was engaged in shouting angry obscen-

ities at a man across the street. In response to the officer's telling her to quiet down, that she was being disorderly, she shouted obscenities at the officer and continued shouting obscenities and gesticulating in an angry manner at the man across the street. The officer again warned her to quiet down, that she was being disorderly, without success. Then the officer told her that she was under arrest for disorderly conduct and, concerned for his safety in the circumstances, patted down the handbag. He felt the gun, seized the bag against her resistance, opened it, and took the gun, which was a loaded .32 caliber weapon, into his possession. These findings are consistent with the evidence related to the judge, although it may be that a further finding, to the effect that a crowd was gathering, went beyond the evidence, which was to the effect that several men stood by watching these events.

On the supported findings we agree with the judge's conclusion that the officer was justified in patting down the handbag and seizing the handgun. Particularly in a modern urban setting, where the carrying of guns in public is, if not by itself indicative of crime (see *Commonwealth* v. *Toole*, 389 Mass. 159, 163 [1983]; *Commonwealth* v. *Couture*, 407 Mass. 178, 180-181, cert. denied, 498 U.S. 951 [1990]), at least a matter of serious public safety concern to the police, the report from a known citizen that a gun is being carried in public warrants investigation by the police. See *Commonwealth* v. *Carey*, 407 Mass. 528, 534-535 n.4 (1990). On making such an investigation, the officer encountered the defendant acting in an angry and belligerent manner toward another and then toward the officer himself. In this situation the officer could reasonably apprehend that the defendant was not wholly in control of herself and that condition, coupled with her reportedly being armed with a handgun, presented a danger to public safety. Nothing in *Commonwealth* v. *Couture*, *supra* at 183, precludes an officer from effecting a protective weapons-frisk where the officer has reason to suspect that a gun is being carried in public in a situation that objectively gives rise to public safety concerns. See *Commonwealth* v. *Fraser*, 410 Mass. 541, 544-547 & n.4

(1991). In a potentially volatile situation an officer should not be required to wait to see if a suspected gun is drawn. Where the officer is justified in making inquiry, the law is clear that he may take prudent precautions for his own safety or that of others. See *Terry* v. *Ohio,* 392 U.S. 1, 27 (1968); *Commonwealth* v. *Ballou,* 350 Mass. 751, 756-757 (1966), cert. denied, 385 U.S. 1031 (1967); *Commonwealth* v. *Bottari,* 395 Mass. 777, 782 n.5 (1985); *Commonwealth* v. *Fraser, supra; Commonwealth* v. *Fitzgibbons,* 23 Mass. App. Ct. 301, 307-309 (1986); *Commonwealth* v. *Hurd,* 29 Mass. App. Ct. 929 (1990). See also *United States* v. *Villanueva,* 15 F.3d 197 (1st Cir. 1994); *United States* v. *Jackson,* 652 F.2d 244, 249-250 (2d Cir.), cert. denied, 454 U.S. 1057 (1981). Compare, 3 LaFave, Search & Seizure, § 9.4(a), at 499 (2nd ed. 1987) (pat-down permissible where officer necessarily comes in contact with person he suspects may be dangerous). Contrast cases cited in LaFave, at 517 n.106, in which police officers proceeded to search for reported weapon without initial pat-down.

The Commonwealth concedes, correctly, that, under the holding of *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 586-595 (1975), the mere use of obscenities in public does not make out the crime of disorderly conduct, G. L. c. 272, § 53, and, in consequence, there may have been no basis for the defendant's arrest prior to seizure of the unlicensed handgun. Nevertheless, the seizure of the gun was, on the judge's findings, not the product of a search incident to arrest. Rather, it was the product of the officer's pat-down of the handbag out of concern for the safety of himself and others in the vicinity. The officer's right to effect such a pat-down, which preexisted the arrest, was not, in our view, vitiated by the arrest, which may be treated, for purposes of this case, as an irrelevancy.

*Judgment affirmed.*