COMMONWEALTH vs. THINH VAN CAO.

Middlesex. October 4, 1994. - February 1, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Search and Seizure*, Threshold police inquiry. *Constitutional Law*, Search and seizure. *Identification. Evidence*, Photograph. *Words*, "Seizure."

At a criminal trial, the judge correctly denied the defendant's motion to suppress a photographic identification of him from a photograph taken by police during a "field interrogation observation," in which uniformed police officers had approached the defendant in public, in a parking lot where he was walking with friends, and had asked him to identify himself and to allow the police to photograph him, where the judge correctly concluded that there had been no seizure of the defendant inasmuch as, in the circumstances, a reasonable person would have believed he was free to leave and to refuse to be photographed. [386-391]

INDICTMENTS found and returned in the Superior Court Department on April 19, 1991.

Motions to suppress evidence were heard by *Patrick J. King*, J., and the cases were tried before *Catherine A. White*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Brownlow M. Speer*, Committee for Public Counsel Services (*John D. Fitzpatrick*, Committee for Public Counsel Services, with him) for the defendant.

*Michael Adam Chinman*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant was convicted on November 12, 1991, of three counts of armed robbery and four counts of assault and battery with a dangerous weapon. Prior to trial, the defendant filed a motion to suppress evidence of a photographic identification made by one of the victims, Jerry

Yinchaun Chi. The motion was denied. The defendant claims on appeal that the motion to suppress should have been allowed because the photograph from which Chi identified the defendant as the robber was obtained during an allegedly illegal seizure of the defendant's person in violation of the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution. We granted the defendant's application for direct appellate review.

We recite the relevant facts found by the judge who heard the motion to suppress. These findings are "binding in the absence of clear error . . . and [we] view with particular respect the conclusions of law which are based on them" (citation omitted). *Commonwealth* v. *Correia*, 381 Mass. 65, 76 (1980). However, because the issue before us is one of constitutional dimensions, the judge's findings of fact and rulings of law are open for reexamination by this court. *Commonwealth* v. *Bookman*, 386 Mass. 657, 661 n.6 (1982). We properly leave questions of credibility for determination by the motion judge, as he had the witnesses before him. *Commonwealth* v. *Meehan*, 377 Mass. 552, 557 (1979), cert. dismissed, 445 U.S. 39 (1980).

On January 6, 1991, several armed men entered the Lotus Flower Restaurant in Framingham, after closing, and robbed the employees. One of the employees, Jerry Chi, saw the face of the first robber as he entered the restaurant. The entrance hallway was well lit and Chi was near the front door when the man entered. Chi was able to describe the man's build, facial features, and clothing.[1]

On January 31, a few weeks after the robbery, Chi was shown an array of about 100 photographs by Boston police.

---

[1] Chi described the man as five feet, five inches or five feet, six inches tall, with high cheekbones and no facial hair and said that the man did not look Vietnamese. Chi also said that the man was wearing a ski hat and a dark jacket.

Chi chose a photograph of the defendant from the array and identified him as the robber he saw enter the restaurant.[2]

The photograph from which Chi identified the defendant was taken by a Boston police detective in November or December of 1990, some months before the robbery, pursuant to a Boston police department policy requiring police in Chinatown to conduct "Field Interrogation Observations" of young men they suspect may be involved with Asian gangs. The motion judge found: "Under this Field Interrogation Observation (FIO) procedure, the police question suspicious looking Asian males asking them to identify themselves, to give their date of birth and a physical description (including height, weight and tatoos), and to take their photograph with a Polaroid camera." The motion judge also found that during an FIO, the individuals approached by the police officer(s) are "free to go and to refuse having their picture taken." As to this defendant, the judge found further: "The police did not . . . give the defendant any reason to believe that he was not free to go, and they asked his permission before taking the picture. Under the totality of the circumstances, a reasonable person would have believed that he was free to leave and to refuse to be photographed. Therefore, the defendant's constitutional rights were not violated."

The evidence before the judge warrants his findings. Boston police Detective Waiman Lee testified that while on foot patrol in Chinatown in November or December, 1990, he conducted an FIO of the defendant and three of his friends, all youths. Lee testified that he conducts FIOs when he suspects someone of being a member of an Asian gang. Lee, dressed in full uniform, approached the group as they were walking together in a parking lot and asked them several

---

[2]Subsequent to the photographic identification, Chi identified the defendant at a lineup and also made an in-court identification of the defendant during trial. The defendant does not argue in his appeal that any of the identification procedures employed by the Boston police were unnecessarily suggestive or conducive to mistaken identification in violation of his right to due process of law. See *Commonwealth* v. *Botelho*, 369 Mass. 860, 866 (1976).

questions including their names, dates of birth, addresses, and physical descriptions. Lee testified that the youths stopped when he approached them and answered the questions.[3] After he asked the questions Lee performed an outstanding warrant check on the youths.[4] The process of questioning and checking for warrants took "no more than 5 minutes." Lee testified that after he had checked for warrants, Detective John Bean came on the scene. At Lee's request, Bean retrieved a Polaroid camera from his car. When Bean returned with the camera he asked the youths, including the defendant, "you don't mind if we take a picture of you, right?," to which the defendant replied, "No, I didn't do anything wrong, go ahead." Lee testified that at no time during these few minutes did the detectives indicate to the group that they were not free to leave. The defendant spoke with his friends during the encounter and appeared to be under no physical distress nor did he indicate that he wanted to leave.

The question of what constitutes a "seizure" triggering an individual's constitutional rights has been the subject of much case law and commentary over the years. The United States Supreme Court recently had occasion to address the issue once again in *California* v. *Hodari D.*, 499 U.S. 621 (1991). In *Hodari D.*, the Court revised its previous definition of seizure as a situation between a law enforcement officer and an individual in which, under the totality of the circumstances, a reasonable person would not have felt free to terminate the encounter and leave. See *Florida* v. *Royer*, 460 U.S. 491 (1983); *United States* v. *Mendenhall*, 446 U.S. 544 (1980). See also *Immigration & Naturalization Serv.* v. *Delgado*, 466 U.S. 210 (1984). The *Hodari D.* Court explained that whether a reasonable person would feel free to leave was only part of the seizure equation. *California* v. *Hodari D., supra* at 628. In addition to a show of authority

---

[3]There was no testimony regarding the exact words spoken by Lee which led to the group's stopping and speaking with him.

[4]There was no testimony regarding whether Lee asked the group to wait for him to conduct the warrant check.

which would indicate to a reasonable person that he was not free to leave, the Court held that there can be no seizure until the individual in question submits to that show of authority. *Id.* at 628-629.[5]

Since the *Hodari D.* decision, Massachusetts courts have not been faced with a case that has required us to interpret art. 14 of the Massachusetts Constitution in light of the *Hodari D.* holding.[6] Massachusetts courts have adhered to the test set forth in the *Mendenhall-Royer* line of cases decided prior to *Hodari D.* as the proper analysis whether a seizure has occurred under article 14 to the Massachusetts Constitution, i.e., "a person has been 'seized' . . . if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985), quoting *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980). See *Commonwealth* v. *Fraser*, 410 Mass. 541, 543 (1991); *Commonwealth* v. *Sanchez*, 403 Mass. 640, 643-644 (1988). See also *Commonwealth* v. *Harkness*, 35 Mass. App. Ct. 626, 628-632 (1993).

Because both the Federal and the Massachusetts Constitutions require some objective indicia that a reasonable person would not have felt free to terminate the encounter with the law enforcement officer before there can be a seizure, we analyze the facts of the instant case under that standard. Cases applying a standard such as the one we apply here are necessarily fact-specific and thus the instant case can be properly decided only on a careful examination of the circumstances surrounding the police-citizen encounter. In the case at bar, Detective Lee approached the defendant and his friends in

---

[5]The Court noted that a seizure is also made whenever officers use physical force to detain an individual. *California* v. *Hodari D.*, *supra* at 624-625.

[6]This court did decide a case with facts similar to those in *Hodari D.* in 1981, ten years before the Supreme Court's decision. *Commonwealth* v. *Thibeau*, 384 Mass. 762 (1981). In *Thibeau*, we held that officers may not pursue a suspect without the reasonable suspicion required for a *Terry* stop because "pursuit that appears designed to effect a stop is no less intrusive than a stop itself." *Id.* at 764.

uniform and asked them several questions concerning their identities. All of the information given was recorded by Lee on a small notecard as was his normal practice when conducting FIOs. There was no evidence that Lee ordered the group to answer his questions or otherwise indicated that they could not terminate the encounter. The FIO was conducted in public, while the defendant was walking with friends in a parking lot, not while the defendant was in a confined space or in a car. Lee testified that during the encounter the defendant spoke with his friends and did not appear to be under any physical distress nor did he indicate at any time that he wished to leave. Under these circumstances, we cannot say that a reasonable person would have been sufficiently intimidated so as to feel that he or she could not terminate the encounter and walk away. Therefore, there was no seizure.[7]

---

[7]Distinguishable on their facts are cases such as: *Commonwealth* v. *Helme*, 399 Mass. 298 (1987) (defendant seized when officer blocked defendant's car with police car so as to prevent defendant from leaving parking lot); *Commonwealth* v. *Borges*, 395 Mass. 788, 793 (1985) (defendant was seized when officer asked him to remove his shoes in order to prevent flight); *Commonwealth* v. *Houle*, 35 Mass. App. Ct. 474 (1993) (defendant seized when officer ordered him to "spit . . . out" contents of his mouth and defendant complied); *Commonwealth* v. *Moore*, 32 Mass. App. Ct. 924 (1992) (defendant seized when officer felt drugs on defendant's person during consented-to search and struggle began). See also *Florida* v. *Royer*, 460 U.S. 491, 501 (1983) ("when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, Royer was effectively seized"). In *Terry* v. *Ohio*, 392 U.S. 1 (1968), the United States Supreme Court noted that "street encounters between citizens and police officers are incredibly rich in diversity. They range from wholly friendly exchanges of pleasantries or mutually useful information to hostile confrontations of armed men involving arrests, or injuries, or loss of life." *Id.* at 13. "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of the person. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* at 19 n.16. Cases decided since *Terry* have made it clear that a law enforcement officer may approach an individual and ask the individual questions without implicating the individual's constitutional rights. See, e.g., *United States* v. *Mendenhall*, 446 U.S. 544

The defendant argues that his case is supported by the Supreme Court's decision in *Brown* v. *Texas*, 443 U.S. 47 (1979). The defendant is mistaken. In *Brown*, the defendant was approached by officers who had no reasonable suspicion that the defendant was involved in any criminal activity and demanded he identify himself. *Id.* at 48-49. When Brown refused and attempted to walk away he was frisked and then arrested. *Id.* at 49. It is clear that in *Brown* there was a seizure of the defendant's person. Brown attempted to terminate the encounter with the police and was detained in response. The Court did not hold that Brown was seized prior to the officers' preventing him from walking away.

The defendant also points to *Commonwealth* v. *Phillips*, 413 Mass. 50 (1992), a recent case decided by this court. In *Phillips*, we suppressed evidence obtained during a search conducted pursuant to police policy which permitted the "search on sight" of black youths in the Roxbury section of Boston suspected of gang involvement.[8] The defendants in that case were approached, searched, and placed in a police cruiser while officers searched the car they had been driving. *Id.* at 52. The officers involved had neither probable cause nor reasonable suspicion that the defendants were engaged in criminal activity. *Id.* at 55.

---

(1980) (no seizure where DEA agents merely approached the defendant in airport, asked to see her identification and airline ticket, and asked her to come to office for further questioning); *Commonwealth* v. *Fraser*, 410 Mass. 541 (1991) (officer did not seize defendant when he approached him, identified himself as a police officer and asked him to take his hands out of his pockets); *Commonwealth* v. *Sanchez*, 403 Mass. 640 (1988) (defendant not seized when officer approached him at airport, displayed his badge and asked if the defendant would talk with him).

[8]The defendant makes much of the fact that race is a determinative factor in who the officers conducting FIOs in Chinatown target and seeks to suppress the FIO photograph under the exclusionary rule on the grounds that the FIO policy is a "formula for absolute tyranny." However, the issue of discrimination is not before us, and even if it were, the proper remedy for the defendant's concerns is not the exclusionary rule. *Terry* v. *Ohio*, 392 U.S. 1, 13-15 (1967) (recognizing that although FIO procedures are a source of conflict between minority youth and police officers, the exclusionary rule is not an effective method of discouraging considerations of race in police work).

As in *Brown, Phillips* involved defendants who were detained (searched and placed in police cruiser), and thereby seized. Thus, our decision in *Phillips* is inapposite.[9]

Last, the defendant relies on *Delaware* v. *Prouse*, 440 U.S. 648 (1979). However, that case involved the stop of an automobile without objective justification. It is a well-established rule that the stopping of an automobile constitutes a seizure. *Id.* at 653. *Colorado* v. *Bannister*, 449 U.S. 1 (1980). *Commonwealth* v. *McGeoghegan*, 389 Mass. 137, 139 (1983). 3 W. LaFave, Search and Seizure § 9.2(h), at 417 (2d ed. 1987).

Because there was no seizure of the defendant's person, the photograph need not be suppressed. Additionally, as the judge found, there was evidence that the officers asked for and received the defendant's permission before taking the photograph and that this consent did not appear in any way

---

[9]We note another case in which police conducted an unconstitutional "sweep" of a high crime area in search of a suspect, and in the process stopped and frisked the defendant without reasonable suspicion. *Commonwealth* v. *Cheek*, 413 Mass. 492 (1992). In *Cheek*, we said that we accepted the motion judge's findings, based on the record, that the defendant was seized when the officers approached him and asked him his name, even before they frisked him. *Id.* at 494 n.2. However, unlike the instant case, the encounter in *Cheek* was one continuous flow of movements over the course of only a few seconds. That fact, in combination with our deference to the motion judge's finding that the defendant had been seized, led to our conclusion.

We stated in *Cheek*, citing *Phillips*: "Where there is a report of a crime in a neighborhood which police consider to be a 'high crime area,' law enforcement officials may not conduct a broad sweep of that neighborhood stopping individuals who happen to live in the area and be about, hoping to apprehend a suspect. To permit police investigative stops under the sparse facts present in this case would be to encourage unduly intrusive police practices." *Id.* at 496-497. We continue to adhere to this principle. Our holding in the instant case is based solely on the fact that, under the circumstances, the defendant was not seized.

Since the cases are often so fact specific, we suggest that the better practice would be for officers conducting FIOs to inform the individuals approached that the encounter is consensual and that they are free to leave at any time. We also suggest that the police department develop clear guidelines for the application of the FIO procedure so that officers are given guidance as to the permissible scope of such encounters. See *United States* v. *High*, 921 F.2d 112, 115 (7th Cir. 1990).

to be involuntarily given. See *Schneckloth* v. *Bustamonte*, 412 U.S. 218 (1973); *Commonwealth* v. *Harmond*, 376 Mass. 557 (1978).

There was no error. The denial of the defendant's motion to suppress is affirmed. The convictions are affirmed.

*So ordered.*