COMMONWEALTH *vs.* ROGENE FOSTER.

No. 98-P-488.

Suffolk. September 8, 1999. - March 1, 2000.

Present: JACOBS, DREBEN, & BECK, JJ.

*Practice, Criminal,* Motion to suppress, Instructions to jury, Voluntariness of statement, Assistance of counsel. *Search and Seizure,* Protective frisk, Threshold police inquiry. *Firearms. Constitutional Law,* Investigatory stop, Reasonable suspicion. *Necessity.*

Review of Massachusetts cases concerning patfrisks conducted during investigatory stops. [673-676]

In the circumstances of an investigative stop, police officers acted reasonably in pat frisking two men after receiving information on the street from a known bystander that one of the men was displaying a handgun on a street corner in a high crime area at 5:30 in the morning. [676] JACOBS, J., concurring.

No error, much less a substantial risk of a miscarriage of justice, was created by the judge's failure to instruct on the issue of the voluntariness of the defendant's statements to police, where the defendant denied he made the statements and where defense counsel specifically declined the instruction. [676-678]

At a criminal trial in which the evidence did not warrant an instruction on necessity as a defense, there was no substantial risk of a miscarriage of justice in the instructions on necessity that the judge did give. [678-679]

At the trial of a complaint alleging illegal possession of a firearm and ammunition, there was no error in the judge's instructions to the jury on the element of possession; further, possession was not a contested issue in the case. [679]

INDICTMENTS found and returned in the Superior Court Department on May 16, 1995.

A pretrial motion to suppress evidence was heard by *Sandra L. Hamlin,* J., and the cases were tried before *David M. Roseman,* J.

*Chris H. Mangos* for the defendant.

*Jennifer M. Callahan,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. During a patfrisk of the defendant shortly after 5:30 A.M. on April 2, 1995, Boston police officer Richard Walker felt a hard object in the defendant's coat pocket. The object was a gun loaded with eight rounds of ammunition. Charged with and convicted of illegal possession of a firearm (G. L. c. 269, § 10[a]), and illegal possession of ammunition (G. L. c. 269, § 10[h]), the defendant claims the patfrisk was in violation of his rights under art. 14 of the Massachusetts Declaration of Rights and the Fourth and Fourteenth Amendments to the United States Constitution and, accordingly, that his motion to suppress the gun and ammunition was erroneously denied. He also challenges certain instructions of the trial judge and argues that his counsel was ineffective in not objecting to the deficiencies in the judge's charge. We affirm the defendant's convictions.

1. *Motion to suppress.* Our recitation of facts is taken from the findings of the motion judge supplemented by uncontroverted testimony of Richard Walker, the only Commonwealth witness.[1] In the early morning hours of April 2, 1995, Boston police officers Richard Walker and Steven Morgan were on undercover duty in an unmarked car on Armandine Street in the Dorchester section of Boston, a high crime area. They were stationed to observe an "after-hours" party on that street because, in the past, shootings had occurred in connection with such parties. Because of the number of cars on the street, the officers estimated that the party was a big one with over one hundred people. Walker himself had previously responded to reports of shots from such after-hours parties on that street. Based on the past direction of cars from which shots had been fired, the officers positioned their vehicle behind Dorchester High School.

At about 5:30 A.M., Walker pulled his vehicle up to the house where the party was being held, and said "hi" to about four black males, one of whom came up to the officers' car. Although Walker did not know the name of the man who approached, he was acquainted with him and had spoken to him on several occasions. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 791 (1996). The man leaned into Walker's car window and stated that two black males dressed in all black clothing had just walked away from Armandine Street headed toward Codman

---

[1]The defendant also testified at the motion to suppress.

Square on Washington Street, and that one of them was "displaying a gun." As Walker began to seek more information, Morgan, his partner, told him that he had seen the men and knew the direction they had taken. The officers immediately drove around the block and, within minutes of the tip, saw two black males dressed in black walking on Washington Street toward Codman Square. The officers stopped the vehicle and got out to question the two men. Based upon the tip, the officers "were concerned at that moment for their safety" and were also aware of the need for protecting others from getting shot. In conducting a limited patfrisk, Walker felt, and then removed, a loaded firearm from the left pocket of the defendant's coat.

The issue is whether the patfrisk was justified.[2] Relying on *Commonwealth* v. *Couture*, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990), and *Commonwealth* v. *Alvarado*, 423 Mass. 266, 269 (1996) (*Alvarado I*), the defendant claims that the stop was improper as there was no indication that he had engaged in criminal activity. All there was here was the report of the possession of a firearm, information which, standing alone, is "not sufficient to give rise to a reasonable suspicion that the defendant was illegally carrying [a] gun." *Couture*, 407 Mass. at 183.

The area of threshold searches is, as Justice Cutter noted in *Commonwealth* v. *McCauley*, 11 Mass. App. Ct. 780, 783 (1981), "troublesome," and no case "is precisely like any other case." Particularly difficult are the instances in which the police receive reports of persons carrying guns. "Our cases have not yet declared reasonable suspicion warranted simply on a report of gun possession just because this country has problems with the unlawful use of guns." *Alvarado I*, 423 Mass. at 273.

While the report of possession of a gun alone is not enough, there is a consistent theme in the gun cases and that is, if the police reasonably perceive danger to themselves or to members of the public, they have a duty to investigate, and may perform a patfrisk if they have a reasonable belief that the defendant is "armed and dangerous." *Commonwealth* v. *Fraser*, 410 Mass.

---

[2] We view the patfrisk in light of the more stringent standards of art. 14 "with the understanding that, if these standards are met, so too are those of the Fourth Amendment." *Commonwealth* v. *Williams*, 422 Mass. 111, 115 n.9 (1996). *Commonwealth* v. *Rodriguez*, 430 Mass. 577, 584-585 (2000).

541, 544-545 & n.4 (1991).[3,4]

*Alvarado I*, 423 Mass. at 274, decided under art. 14, stated that "reasonable suspicion justifying an investigatory stop cannot be founded on an anonymous tip concerning a concealed weapon made by a person whose reliability is not established where *there is no indication* (in the tip or otherwise) of *a threat to anyone's physical well being or* of the commission of a crime (other than *the possibility* of the possession of an unlicensed weapon)" (emphasis supplied).[5]

The clause prior to the "or" in the *Alvarado I* formulation is highly significant. If there is reason to believe that there is an "imminent threat to public safety," *id.* at 271, even an automobile stop, see note 5, *supra*, is proper without direct information that the persons in the car committed, were committing or were about to commit a crime.[6] Thus, a report from a disinterested citizen, who identified himself and relayed his

---

[3]The patfrisk in *Commonwealth* v. *Fraser*, 410 Mass. 541, was not preceded by a forcible stop. See *id.* at 544 & n.4. *Alvarado I*, 423 Mass. at 269 n.4, may suggest that the requirements for a protective frisk after the report of a gun do not differ substantially from the requirements of *Couture*.

[4]See *Commonwealth* v. *Stoute*, 422 Mass. at 790, which, citing *Commonwealth* v. *Fraser*, 410 Mass. at 544-545 n.4, noted: "When a tip, such as the one received here, [from bystanders who could have been identified in a 'very' high crime area in a public street], concerns the possession of a firearm, it deserves the immediate attention of law enforcement officials."

Note 6 of *Alvarado I*, 423 Mass. at 271, points out that the defendant in *Stoute* did not argue that the police could not reasonably infer criminal conduct from a report of the possession of a gun.

[5]*Alvarado I*, and also *Couture*, involved the stop of an automobile; an automobile stop under our cases unquestionably constitutes a seizure. *Commonwealth* v. *Couture*, 407 Mass. at 183. *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 390, cert. denied, 515 U.S. 1146 (1995). *Commonwealth* v. *Rodriguez*, 430 Mass. at 579. Compare *Commonwealth* v. *Fraser*, 410 Mass. at 543; *Commonwealth* v. *Thinh Van Cao*, 419 Mass. at 387-388, holding that approaching and questioning an individual who is standing or walking is not a seizure if a reasonable person would not have been sufficiently intimidated so as to feel that he could terminate the encounter and walk away. In the present case, the judge in her findings did not mention the questioning of the men by the officers and treated the initial encounter prior to the patfrisk as a stop needing specific and articulable facts that the defendant was engaged in criminal activity. See *Commonwealth* v. *Stoute*, 422 Mass. at 789-790.

[6]Of course, if the police had a reasonable suspicion based on specific and articulable facts that the defendant "has committed, is committing or is about to commit a crime," an investigatory stop would be warranted. *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). *Alvarado I*, 423 Mass. at 268.

personal observation that someone in a described car was carrying a sawed-off shotgun — after the stop it was determined to be only a handgun — justified the stop of the car and the ensuing search. *Commonwealth* v. *Alvarado*, 427 Mass. 277, 283-284 (1998) (*Alvarado II*). "While a sawed-off shotgun can be lawfully registered in Massachusetts," *id.* at 282, the rarity of its lawful possession and its lethal character are such that "the requirement of nexus to criminal activity is met by the fact that likely possession of a sawed-off shotgun, by itself, discloses an 'imminent threat to public safety.'" *Id.* at 283, quoting from *Alvarado I*, 423 Mass. at 271.

Other examples of dangerous exigent circumstances justifying a stop are *Commonwealth* v. *Hurd*, 29 Mass. App. Ct. 929, 930-931 (1990) (anonymous caller told police that man who appeared to be drunk was getting into a described automobile containing three small children); and *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. Ct. 301, 307 (1986) (defendant conceded that police had grounds for a *Terry* stop where anonymous call that driver of described car had "pointed a handgun, perhaps an automatic weapon, at a group of citizens").

The cases not involving cars, see note 5, *supra*, recognize that a report from a known person that a gun is being carried in public "warrants investigation by the police. . . . Nothing in *Commonwealth* v. *Couture*, [407 Mass.] at 183, precludes an officer from effecting a protective weapons-frisk where the officer has reason to suspect that a gun is being carried in public in a situation that objectively gives rise to public safety concerns." *Commonwealth* v. *Johnson*, 36 Mass. App. Ct. 336, 337 (1994). In *Johnson*, we held that where the defendant was shouting obscenities and gesticulating in an angry manner, "the officer could reasonably apprehend that the defendant was not wholly in control of herself and that condition, coupled with her reportedly being armed with a handgun, presented a danger to public safety." *Ibid.* Even where the tip was anonymous, as in *Commonwealth* v. *McCauley*, 11 Mass. App. Ct. at 781, we upheld a patfrisk. In that case the police received a report that a white male of a certain height and wearing described clothing was carrying a firearm that he had dropped on the floor more than once. We pointed out that "[t]he account of dropping a pistol strongly suggested carelessness with firearms and perhaps even intoxication." *Ibid.* The "officers, because of the information received from the dispatching officer; had at least 'a reason-

able suspicion, based on objective facts' that [the defendant] was 'involved in criminal activity' . . . , *that is, the possession of a pistol, in circumstances which might easily prove to be dangerous to others.*" *Id.* at 784 (internal citations omitted). See *Commonwealth* v. *Anderson,* 366 Mass. 394 (1974) (anonymous note, confirmed somewhat by police observations, handed to police officer by dispatcher which stated "New York to Boston. Please get the Boston Police. Bus terminal Boston Greyhound. 1 Man Armed & Dangerous. Black. Blue hat. Brown Paper Bag. Important! has Narcotics. This is no joke.")

In the circumstances here, taken as a whole, see *Commonwealth* v. *Williams,* 422 Mass. 111, 116 (1996), and particularly in light of Walker's own experience of shootings during after-hours parties on Armandine Street, *Terry* v. *Ohio,* 392 U.S. 1, 27 (1968); *Commonwealth* v. *Thompson,* 427 Mass. 729, 734, cert. denied, 119 S. Ct. 524 (1998), the officers, after receiving information from a known bystander, see *Commonwealth* v. *Stoute,* 422 Mass. at 791, who, they could have inferred, had personal knowledge, see *id.* at 790, that one of the men seen on Armandine Street was displaying a gun,[7] acted reasonably when they pat frisked the men believing that they were armed and dangerous. As the motion judge found, there was here more than carrying a gun, "there was additional information suggesting the potential for criminal activity — namely the fact that a reliable informant told [the officers] that [the] defendant, who had just come from an after-hours party, was displaying a handgun on a street corner in a high crime area at 5:30 in the morning." She correctly concluded that,

---

[7]Dictionary definitions and other sources indicate that "display" could reasonably have been understood by the officers to mean flaunt or exhibit ostentatiously. Black's Law Dictionary 471 (6th ed. 1990) defines "display" as "an opening or unfolding, exhibition, manifestation, ostentatious show, exhibition for effect, parade." The American Heritage Dictionary of the English Language 380 (1976) states: "1. To hold up to view; make visible; expose; exhibit. 2. To make manifest or noticeable; show evidence of. 3. To exhibit *ostentatiously* or *prominently;* show off; parade; flaunt. . . ." Merriam-Webster's Collegiate Dictionary 335 (10th ed. 1999) states that to "display" is to "put or spread before the view," "make evident," or "exhibit ostentatiously." See *Cooper* v. *Civil Serv. Commn. of Denver,* 43 Colo. App. 258, 261 (1979) ("[D]isplay," as used in a city police department regulation, "suggests more than merely pulling a gun from a holster or place of safekeeping. It connotes 'an exhibition, an advertisement, an intentional flaunting of the weapon' "), quoting from *Tinner* v. *Police Bd. of Chicago,* 62 Ill. App. 3d 204, 208 (1978).

"[u]nder the circumstances, the officers had a reasonable suspicion that [the] defendant posed a threat to the public and were therefore justified in . . . conducting a pat-down search."

2. *Instructions of judge at trial.* The claims now made as to the judge's instructions were not made at trial and were raised for the first time on appeal. Whether we apply the standard of a substantial risk of a miscarriage of justice or that of determining whether counsel was ineffective, the standards for our review of the defendant's contentions are for present purposes the same. Thus, if there is no risk of a substantial risk of a miscarriage of justice, the defendant cannot claim ineffective assistance of counsel. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 625 n.4 (1994).

a. *Failure to give a humane practice instruction.* At trial, Walker and his partner testified that during the ride to the police station, the defendant initiated a conversation saying the police didn't understand "what it was like out on the street." He stated that "he had found the gun the day before, and he had kept it for protection."[8] At trial, the defendant insisted that he had not made the statements; on the contrary, he claimed that he had found the gun on the day of the party across the street where he had gone to relieve himself after he left the party. He also testified to this effect at the hearing on the motion to suppress.

At the close of trial, the judge, stating that he was acting "in excess zeal and caution," specifically asked defense counsel if he would like the issue of voluntariness of the defendant's statements to be submitted to the jury, i.e., the humane practice instruction. Defense counsel answered, "No."

The defendant now argues, pointing to the motion to suppress, that the voluntariness of those statements was a live issue at trial and that his counsel should have requested a jury instruction on the issue. The defendant further asserts that the judge had the responsibility sua sponte to conduct a voir dire to

---

[8]At the hearing on the motion to suppress, the defendant, in addition to seeking suppression of the gun and ammunition, urged the suppression of his statements in the car on the ground that he had not been given *Miranda* warnings (*Miranda* v. *Arizona*, 384 U.S. 436 [1966]) at the time he made these statements. He did not claim in his pretrial motion that the statements were involuntary. See *Commonwealth* v. *Alan A.*, 47 Mass. App. Ct. 271, 275 (1999). The motion judge denied the motion to suppress in its entirety without discussion of the statements. As the defendant does not on appeal urge error with respect to the motion to suppress insofar as it concerned the defendant's statements, any such argument is waived.

determine voluntariness of the defendant's statements and instruct the jury on voluntariness. A judge, however, has "no duty to ask the jury to pass on voluntariness unless it is made a live issue at trial." *Commonwealth* v. *Tavares*, 385 Mass. 140, 150, cert. denied, 457 U.S. 1137 (1982), quoting from *Commonwealth* v. *Alicea*, 376 Mass. 506, 523 (1978).

Since at both the hearing on the motion to suppress and at trial, the defendant claimed that he never made the statements attributed to him by the police, the defense did not focus on voluntariness. Neither at the hearing on the motion to suppress nor at trial did the defendant, as is required, *Commonwealth* v. *Smith*, 426 Mass. 76, 82 (1997), raise the issue of voluntariness or offer some proof to support the claim. It was not a live issue and, where, in addition, the defense specifically declined the instruction, the judge had no obligation to submit the issue of voluntariness to the jury. *Commonwealth* v. *Burke*, 414 Mass. 252, 260 (1993). See *Commonwealth* v. *Tavares*, 385 Mass. at 150. "Furthermore, it would be anomalous to require the judge to inquire into the issue 'where it might be [and here was] contrary to the theory and strategy of the defendant.' " *Commonwealth* v. *Benoit*, 410 Mass. 506, 513 (1991), quoting from *Commonwealth* v. *Pratt*, 360 Mass. 708, 714 (1972).

There was no error, let alone a substantial risk of a miscarriage of justice, in the judge's not giving the humane practice instruction sua sponte. Accordingly, counsel's failure to request the instruction does not present a claim of ineffective assistance of counsel. *Commonwealth* v. *Curtis*, 417 Mass. at 625 n.4.

b. *Instructions on necessity.* Again, the defendant did not object to the instructions and we review his claims to determine whether there was a substantial risk of a miscarriage of justice.

Although the judge's instructions set forth in the margin[9] were insufficient and should have followed the requirements of *Commonwealth* v. *Leno*, 415 Mass. 835, 839 (1993),[10] the defendant, even on the basis of his own version of events, was

---

[9]"Finally, members of the jury, in order for a defendant to claim a defense of necessity — that's the words we use — to the charges of these indictments, the defendant must be facing an immediate, serious threat of bodily injury or death for him to assert such a claim."

[10]"[T]he application of the defense [of necessity] is limited to the following circumstances: (1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his [or her] action will be effective as the direct cause of abating the danger; (3) there is [no] legal alternative which will be effective in abating

not entitled to an instruction on necessity. He testified that after he found the gun, he picked it up to prevent someone from being hurt. He did not testify that there was any clear and imminent danger for which no legal alternative was available. There was no evidence that anyone had expressed an intention to use the gun. Contrast *Commonwealth* v. *Iglesia*, 403 Mass. 132, 133 (1988). Since the defendant was not entitled to any instruction on necessity, "whatever the judge said about [necessity, including the burden of proof on the issue] was more favorable to the defendant[] than [he] deserved and could not have prejudiced [his] position." *Commonwealth* v. *Curtis*, 417 Mass. at 631-632.

c. *Instructions as to possession.* The defendant challenges the judge's instructions on possession set forth in the margin.[11] He contends that the instructions were too close to the facts of the case, and thus were prejudicial.

"Although the example[] the judge chose bore some resemblance to the facts of this case, he did not err in giving the instruction. [Possession] was not a contested issue in this case." *Commonwealth* v. *Pina*, 430 Mass. 266, 274 (1999). The defendant did not challenge the element of possession of the gun at trial and there was no suggestion that the defendant did not possess the gun at issue. The defendant unequivocally testified that he found the gun and put it in his pocket. Even if there was error, "no harm accrues to a defendant if an error does not relate to an issue actively contested at trial." *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986). There was here no substantial risk of a miscarriage of justice.

*Judgments affirmed.*

JACOBS, J. (concurring). At present, the governing case law in

---

the danger; and (4) the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue."

[11] "By way of example, if you had a purse here, you would possess whatever is in that purse right now; or if you have a pocket in your trousers, you possess whatever is in that pocket right now." Then, in response to a question from the jury, the judge stated, "you possess whatever you have in your pocket or purse right now." When asked for a third instruction on the definition of possession by the jury, the judge stated, "[t]o show possession, there must be evidence justifying a conclusion that the defendant had the power and the intention to exercise control over the firearm."

this State does not permit a search or patfrisk of a person reliably reported to be armed merely because there is a possibility he may be in possession of an unlicensed gun. *Commonwealth* v. *Couture*, 407 Mass. 178, cert. denied, 498 U.S. 951 (1990). *Commonwealth* v. *Alvarado*, 423 Mass. 266 (1996) (*Alvarado I*). As the majority opinion points out, an additional factor is required in the form of a reasonable suspicion based on specific, articulable facts of past, present or impending criminal behavior by that person, *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974), or a reasonable belief that there is an "imminent threat to public safety," *Alvarado I, supra* at 271; *Commonwealth* v. *Alvarado*, 427 Mass. 277, 283 (1998) (*Alvarado II*), or a showing (in the absence of a forcible stop) that the investigating officer reasonably believed that person to be "armed and dangerous." *Commonwealth* v. *Fraser*, 410 Mass. 541, 544-545 n.4 (1991). Notwithstanding the arresting officer's uncontradicted testimony at the motion hearing that neither of the two men who were questioned on Washington Street exhibited any suspicious behavior, the majority discerns the requisite additional factor from the totality of circumstances, correctly concluding the two men were "dangerous" and posed a threat to the public.

I write to indicate that my concurrence relies not only on the stated facts but largely also on the unique and broadly recognized hazards to police officers and the public presented by guns in the streets. See *United States* v. *Bold*, 19 F.3d 99, 104 (2d Cir. 1994), cert. denied, 517 U.S. 1250 (1996); *United States* v. *DeBerry*, 76 F.3d 884, 886 (7th Cir. 1996); *Commonwealth* v. *Johnson*, 36 Mass. App. Ct. 336, 337 (1994) ("Particularly in a modern urban setting, . . . the carrying of guns in public is, if not by itself indicative of crime . . . , at least a matter of serious public-safety concern to the police . . ."); *Commonwealth* v. *Berment*, 39 Mass. App. Ct. 522, 529-530 (1995) (Kass, J., dissenting). The inherent dangerousness of guns in the streets is not diminished by the fact that licensed carrying of a gun is lawful. It was this inherent dangerousness *together* with the circumstances described in the majority opinion that gave rise to an imminent threat that shots soon might be fired by the man who had displayed the gun. When the officers, then under a duty to investigate, see *Commonwealth* v. *Fraser, supra*, reasonably and quickly came upon the defendant, they had little choice but to pat frisk him while determining whether he presented a risk to public safety.

"Where the officer is justified in making inquiry, the law is clear that he may take prudent precautions for his own safety or that of others." *Commonwealth* v. *Johnson, supra* at 338, citing *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968).