COMMONWEALTH *vs.* GIOVANNY DEJESUS.

No. 07-P-803.

Suffolk. March 12, 2008. - June 23, 2008.

Present: GREEN, GRAHAM, & GRAINGER, JJ.

*Practice, Criminal,* Motion to suppress. *Constitutional Law,* Investigatory stop, Reasonable suspicion. *Search and Seizure,* Reasonable suspicion.

A District Court judge properly allowed the criminal defendant's motion to suppress evidence of a handgun that police officers seized from the defendant's waistband during an investigatory stop after ordering the defendant out of the vehicle in which he was seated, where, despite the defendant's refusal to exit the vehicle and his nervous demeanor, the officers had no reasonable suspicion that the defendant had committed, or was about to commit, a crime, and where there was no imminent threat to public safety. [119-121] GRAHAM, J., concurring.

COMPLAINTS received and sworn to in the West Roxbury Division of the Boston Municipal Court Department on September 5, 2006.

A pretrial motion to suppress evidence was heard by *Michael J. Coyne,* J.

*Carina R. Canaan,* Assistant District Attorney, for the Commonwealth.

*Donna Jalbert Patalano* for the defendant.

GREEN, J. The Commonwealth appeals from an order of a Boston Municipal Court judge, allowing the defendant's motion to suppress evidence seized during a warrantless search.[1] We affirm the order, because at the time the police ordered the defendant to step out of the vehicle in which he was seated, police had no reasonable suspicion that he had committed, or was about to commit, a crime, and there was no imminent threat to public safety.

---

[1] A single justice of the Supreme Judicial Court allowed the Commonwealth to take an interlocutory appeal from the judge's order. See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996).

*Background.* We summarize the motion judge's findings of fact, supplemented by uncontested evidence that the judge appears to have credited. See *Commonwealth* v. *Isaiah I.,* 448 Mass. 334, 337 (2007). At approximately 3:30 P.M. on September 1, 2006, a caller to a 911 emergency line stated as follows: "I just wanted to tell you that I looked out the window and there was [*sic*] some kids in a white van with a, I seen [*sic*] a few handguns." After a few questions by the 911 operator, the caller stated that he observed a white van with a few kids standing around it just outside of his building and one person, with a black gun, inside the van. The caller described the person inside the van as a kid who "looks Hispanic from here, but a little dark-skin though [*sic*]." The 911 operator issued a radio dispatch stating "[Inaudible] 20 Dixwell for a person with a gun. [Inaudible] three Hispanic males getting out around a white van. Inside the van is a Hispanic male, dark skin. Says suspect has the gun."

Boston police Officer Antonio Nunez heard the dispatch while on routine patrol with his partner, Officer Mike Santry, in a marked cruiser in the area of Dixwell Street in the Jamaica Plain section of Boston. Nunez had made prior arrests for illegal possession of drugs and handguns in the area.

Approximately thirty-seven minutes after receiving the dispatch, Nunez and Santry, accompanied by additional police officers in separate cruisers, arrived at 20 Dixwell Street. When he arrived, Nunez observed four or five Hispanic males outside a white van. Officers other than Nunez pat frisked those persons, but found no gun. Nunez and Santry proceeded to the front of the van, where two Hispanic males were seated inside. In the driver's seat was a person later determined to be the defendant's father. He was ordered out of the van and frisked, but no weapon was found. The defendant, who appeared to Nunez to be in his early twenties, was in the passenger seat. Nunez asked him to step out of the van. The defendant remained seated and asked Nunez why he was being asked to leave the van. Nunez informed him that the police had received a report of a man with a firearm, "and, for officers' safety, we need to check everybody out at that given moment." The defendant, then, "seemed a little nervous. . . . just looking from side to side," and told the officers that they needed a warrant to get him out of the vehicle.

Nunez again asked the defendant to step out of the van and, after the defendant again refused, Nunez informed him that he would be arrested unless he complied. The defendant then left the vehicle and Nunez pat frisked him, finding a handgun in his waistband.

*Discussion.* In reviewing the allowance of a motion to suppress, we accept the motion judge's "subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). The judge determines the weight and credibility of the evidence. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990). "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996).[2]

Warrantless searches are presumptively unreasonable under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *King*, 67 Mass. App. Ct. 823, 826 (2006). To justify a police investigatory stop under the Fourth Amendment or art. 14, the police must have "reasonable suspicion" that the person has committed, is committing, or is about to commit a crime. *Commonwealth* v. *Lyons*, 409 Mass. 16, 18-19 (1990). Reasonable suspicion must be "based on specific, articulable facts and reasonable inferences therefrom." *Id.* at 19, quoting from *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984).

In the present case, the police had no reasonable suspicion either "of a threat to anyone's physical well being or of the commission of a crime (other than the possibility of the possession of an unlicensed weapon)." *Commonwealth* v. *Alvarado*, 423 Mass. 266, 274 (1996). See *Commonwealth* v. *Couture*, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990). The case is unlike those which have distinguished the *Couture* decision on the ground

---

[2]The motion judge erroneously based his suppression order on his conclusion that Officer Nunez lacked "probable cause." As discussed *infra*, the question is instead whether the officer had reasonable suspicion to believe that the defendant had committed, was committing, or was about to commit a crime. See *Commonwealth* v. *Love*, 56 Mass. App. Ct. 229, 231 (2002).

that the report of a gun, viewed in the circumstances taken as a whole, raised a likelihood either of criminality or of an imminent threat to public safety. See, e.g., *Commonwealth* v. *Alvarado*, 427 Mass. 277, 282-283 (1998) (rarity of lawful possession of sawed-off shotgun, coupled with its lethal character, discloses imminent threat to public safety); *Commonwealth* v. *McCauley*, 11 Mass. App. Ct. 780, 781 (1981) (dropping gun on floor more than once suggested carelessness with firearms and possible intoxication, creating threat to public safety); *Commonwealth* v. *Johnson*, 36 Mass. App. Ct. 336, 337 (1994) (individual carrying handgun in her purse, shouting obscenities and gesticulating in angry manner); *Commonwealth* v. *Foster*, 48 Mass. App. Ct. 671, 676-677 (2000) (display of gun in high crime area at 5:30 A.M. by individual who had just come from after-hours party).

In the present case, police encountered the defendant while he was seated in an automobile. There were no grounds to believe that he had committed, or was about to commit, a crime. Though the area was described as a high crime area, it was 3:30 in the afternoon. There had been no reports that a gun had been fired. There was no reasonable basis for the officer to believe that he was in danger, and the motion judge so found. See *Commonwealth* v. *Knowles*, 451 Mass. 91, 99-100 (2008). There was likewise no basis to support a reasonable suspicion that the defendant's possession of the gun constituted a crime. Though the 911 tip described a "kid" with a gun, the officers' observations upon arrival dispelled any belief that the defendant was a minor; the officer's testimony at the suppression hearing was that he believed the defendant to be in his "early twenties." Compare *Commonwealth* v. *Garden*, 451 Mass. 43, 46 (2008) (justification for stop evaporated once officer observed that driver was male, and therefore could not be vehicle's female owner with suspended license).[3] There was, accordingly, no basis to justify the officer's order to the defendant to leave the automobile.

The Commonwealth argues that we should consider the defendant's suspicious behavior — his refusal to get out of the

---

[3] We accordingly need not consider whether the information known by the 911 operator, but not included in the radio dispatch, is imputed to the responding officers.

van and his nervous demeanor — as giving rise to reasonable suspicion. However, the cited behavior did not occur until after Nunez issued the exit order, and the "suspicion must be reasonable *before* the [stop] begins. Were the rule otherwise, the police could turn a hunch into a reasonable suspicion by inducing the conduct justifying the suspicion" (emphasis in original). *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764 (1981). Moreover, while presence in a high crime area is a factor that, combined with others, may contribute to reasonable suspicion for a lawful seizure, see *Commonwealth* v. *Thompson*, 427 Mass. 729, 734, cert. denied, 525 U.S. 1008 (1998), citizens living in such areas have the same right as other citizens to be free from unlawful seizures. See *Commonwealth* v. *Cheek*, 413 Mass. 492, 496-497 (1992).

The order of the District Court allowing the motion to suppress is affirmed.

*So ordered.*

GRAHAM, J. (concurring). I concur in the result reached by the court, but I am of the opinion that neither the tip provided by the anonymous caller nor the observations of Officer Nunez at the scene provided a reasonable basis on which to suspect that the defendant was violating the law. We have nothing here to justify a reasonable suspicion of criminal conduct beyond a report of an unknown person seeing a gun in a car. The tip in the instant case failed to provide even a rudimentary description sufficient to help the police correctly identify the person whom the caller meant to describe. Consequently, when the police arrived at the scene, more than one-half hour after the dispatch, they conducted a patfrisk of every Hispanic male in or near the white van. See generally *Florida* v. *J.L.*, 529 U.S. 266 (2000); *Commonwealth* v. *Alvarado*, 423 Mass. 266 (1996) (tip from anonymous telephone caller who reported seeing Hispanic subjects in car in possession of handgun wrapped in towel was not sufficiently reliable to warrant investigatory stop in absence of threat of physical harm or commission of crime other than unlicensed possession). Contrast *Commonwealth* v. *Costa*, 448

Mass. 510 (2007) (patfrisk justified where unidentified caller placed her anonymity at risk and identified "teenage" defendant as having handgun; police arrived within minutes to area where shootings had previously occurred, and found defendant, recognizable from caller's detailed description, and appearing younger than legal age at which firearm license could be obtained).