## COMMONWEALTH vs. JOSE GOMES.

No. 08-P-1552.

Bristol. October 6, 2009. - November 20, 2009.

Present: GRASSO, FECTEAU, & HANLON, JJ.

Further appellate review granted, 455 Mass. 1108 (2010).

*Constitutional Law,* Search and seizure, Reasonable suspicion, Investigatory stop. *Search and Seizure,* Threshold police inquiry, Reasonable suspicion. *Practice, Criminal,* Motion to suppress.

This court concluded that a criminal defendant adequately preserved his challenge to the denial of his motion to suppress evidence seized and statements the defendant made following a stop and frisk by a police officer, where the defendant's motion and affidavit sufficiently expressed the basis of his request to suppress all items seized as a result of a vehicle search, including any statements made to the police, because the search and seizure violated his Federal and State constitutional rights. [792-793]

A District Court judge erred in denying a defendant's motion to suppress evidence seized and statements the defendant made following a warrantless search, where the Commonwealth failed to establish the reliability of a 911 emergency telephone call, made by an unidentified caller, that was the basis for a radio broadcast to police and led to the investigatory stop of the defendant by a police officer, in that the Commonwealth did not introduce evidence that the caller and the caller's information were credible, or provide evidence of independent police corroboration to make up for deficiencies in the indicia of reliability of the call. [793-797]

COMPLAINT received and sworn to in the New Bedford Division of the District Court Department on May 24, 2006.

A pretrial motion to suppress evidence was heard by *Therese M. Wright,* J., and the case was tried before *Joan E. Lynch,* J.

*Christine K. Tramontana* for the defendant.

*Kristen L. Spooner,* Assistant District Attorney (*David J. Gold,* Assistant District Attorney, with her) for the Commonwealth.

FECTEAU, J. The defendant appeals from convictions, after a jury trial in the District Court, of unlawful possession of a firearm and ammunition, G. L. c. 269, § 10(*a*), (*h*), respectively.

He contends that the judge erroneously denied his motion to suppress because the police did not have reasonable suspicion that he was engaged in criminal conduct or that he was an imminent threat to public safety in order to justify their stop and frisk of him. Therefore, he argues that the evidence seized and the statements he made should have been suppressed. We reverse.

*Background.* The motion judge found the following pertinent facts: "On May 24, 2006, at approximately 8:00 A.M., a call was dispatched over the New Bedford [p]olice [d]epartment radio system of a man holding a gun in the air on Hazard Street. The man was described as a black male wearing a gray shirt and yellow pants standing outside of a green Honda automobile. Officer Oliveira, who was traveling alone in his marked cruiser, was the first to arrive in the area. He observed a green Honda parked on Hazard Street. He got out of his cruiser and ordered the driver, the defendant, out of the car. The defendant got out of the car. He was a black male wearing a gray shirt and green pants. The officer conducted a pat frisk of the defendant and asked him whether he had any weapons. The defendant stated that a weapon was in the car."[1]

*Waiver.* First, the Commonwealth complains that the defendant has waived the argument he presents on appeal because, at the suppression hearing, the defendant did not specifically challenge the exit order or the veracity or reliability of the call to the police, contrary to the requirements of Mass.R.Crim.P. 13(a)(2), as appearing in 442 Mass. 1516 (2004). We disagree.

The essence of the defendant's argument was that the search and seizure was not justified. In his affidavit, the defendant complained that the police removed him from his car, frisked him, and searched his car without consent. It is clear from a reading of the motion papers that the lawfulness of this warrantless search was being placed at issue. While neither the motion to suppress

---

[1]Although findings of the motion judge do not refer to other testimony of the police officers at the hearing relevant to the content of the radio dispatch, we supplement those findings with this additional, uncontroverted testimony that we infer was credited (see *Commonwealth* v. *Alvarado*, 423 Mass. 266, 268 n.2 [1996]): there was "a 911 . . . emergency call for a man with a gun"; an "emergency call for . . . a male holding a gun in the air"; "a call regarding someone with a firearm, loading a firearm"; and a "male . . . waving a gun around."

nor the defendant's affidavit specifically challenged whether the officers had an adequate basis to conduct this stop and frisk, the Commonwealth had the burden to prove that the officer's intervention was lawful and based on reasonable suspicion. See *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 56-57 (1974); *Commonwealth* v. *Santiago*, 30 Mass. App. Ct. 207, 212-213 (1991). "Where the police rely on a police radio call to conduct an investigatory stop, under both Federal and State law, the Commonwealth must present evidence at the hearing on the motion to suppress on the factual basis for the police radio call in order to establish its indicia of reliability." *Commonwealth* v. *Berment*, 39 Mass. App. Ct. 522, 526 (1995), quoting from *Commonwealth* v. *Cheek*, 413 Mass. 492, 494-495 (1992).

Moreover, the Commonwealth was on fair notice that the unidentified 911 call was the only basis on which the stop and exit order could be justified, because when the police arrived at the defendant's location, they observed the defendant, seated in a motor vehicle, without any suspicious activity taking place. Finally, defense counsel's closing statement questioned the sufficiency of the 911 call, thus alerting the judge and the Commonwealth to this as a suppression theory at issue. *Commonwealth* v. *Edwards*, 71 Mass. App. Ct. 716, 719 (2008). Therefore, we conclude that the motion and affidavit sufficiently expressed the basis of the defendant's request to suppress all items seized as a result of the vehicle search, including any statements made to police, because the search and seizure violated his Federal and State constitutional rights.

*Stop and frisk.* Turning to the merits, the main issue on appeal is whether the Commonwealth established that the radio dispatch on which the police acted carried sufficient evidence of its reliability and basis of knowledge to satisfy constitutional requirements. Because the Commonwealth failed to establish the reliability of the report underpinning the officer's actions, the evidence must be suppressed. Put differently, the evidence must be suppressed, not because what the officer did was unreasonable based upon what was reported to him, but because the Commonwealth failed to establish the reliability of what was reported anonymously.

In determining whether an officer acts reasonably in initiating

a threshold, or investigatory, stop, we view the circumstances as a whole, see *Commonwealth* v. *Williams*, 422 Mass. 111, 116 (1996), and consider the "specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968). "Reasonable suspicion depends upon both the content of the information possessed and its degree of reliability." *United States* v. *Bold*, 19 F.3d 99, 102 (2d Cir. 1994). "Tips from informants must be evaluated by reference to their reliability and the probable basis of knowledge of the informant. See K.B. Smith, Criminal Practice and Procedure § 306 (1983 & Supp. 1996)." *Commonwealth* v. *Stoute*, 422 Mass. 782, 790 (1996).

To support an intervention by police such as occurred here against constitutional challenge, State and Federal law have, for some time, demanded something more than a mere anonymous call. See *Florida* v. *J.L.*, 529 U.S. 266, 274 (2000); *Commonwealth* v. *Lyons*, 409 Mass. 16, 22 (1990); *Commonwealth* v. *Barros*, 435 Mass. 171, 177 (2001); *Commonwealth* v. *Berment*, 39 Mass. App. Ct. at 526-527. As recently observed by the Supreme Judicial Court, "[w]hen, as here, a police radio broadcast directs officers to make an investigatory stop of a motor vehicle, the stop is lawful only if the Commonwealth establishes both the indicia of reliability of the transmitted information and the particularity of the description of the motor vehicle. . . . To establish that the transmitted information bears adequate indicia of reliability, the Commonwealth must show the basis of knowledge of the source of the information (the basis of knowledge test) and the underlying circumstances demonstrating that the source of the information was credible or the information reliable (veracity test). . . . 'Because the standard is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible.' " *Commonwealth* v. *Lopes*, 455 Mass. 147, 155-156 (2009), quoting from *Commonwealth* v. *Lyons, supra* at 19.

Here, the source of the information that the defendant was engaged in criminality was an unidentified and unidentifiable caller. Notwithstanding the well-settled manner for establishing the reliability of an anonymous 911 caller, the Commonwealth inexplicably offered no evidence at the hearing on which the motion judge could conclude that the caller placed his anonym-

ity at risk or was otherwise reliable. See *Commonwealth* v. *Costa*, 448 Mass. 510, 516-517 (2007); *Commonwealth* v. *Love*, 56 Mass. App. Ct. 229, 233-234 (2002); *Commonwealth* v. *Rodriquez*, 70 Mass. App. Ct. 904, 905 (2007). Indeed, the prosecutor failed to introduce any evidence as to the source of the radio broadcast other than testimony that it arose as a result of a 911 call or calls.[2] The prosecutor did not introduce a recording of the 911 call(s) or any other information regarding the 911 call(s) or the caller(s) from which a conclusion could be made that the source of the information was reliable. See *Florida* v. *J.L.*, 529 U.S. at 275 (Kennedy, J. concurring) ("The record does not show whether some notation or other documentation of the call was made either by a voice recording or tracing the call to a telephone number"). Compare *Commonwealth* v. *Costa*, *supra* at 515 ("When assessing the reliability of citizens who report apparent violations of the law, we accord more weight to the reliability of those who are identified").

The level of detail of the caller's information, standing alone, is insufficient to establish the reliability of the call in its assertion of illegality. See *ibid*. See also *Florida* v *J.L.*, *supra* at 271-272 (reasonable suspicion requires tip to be reliable in assertion of illegality, not just its tendency to identify determinate person).

In *Commonwealth* v. *Costa*, *supra* at 512-513, while the 911 caller was not identified, the Commonwealth introduced evidence that the 911 system operator identified the caller's telephone number and informed the caller that her cellular telephone number had been identified and that the call was being recorded. In addition, the caller reported her location. Here, no such information was available on which to conclude that the caller and his or her information warranted credit.

Also lacking is the independent police corroboration necessary to make up for deficiencies in the indicia of reliability of the call that formed the basis of the broadcast information. See *Commonwealth* v. *Barros*, 435 Mass. at 176-177. When the police arrived on the scene, all they saw was a person (now seated in a green car with a female) whose appearance was consistent with

---

[2]See note 1, *supra*.

that described — of a black male with grey shirt and yellow pants (although one officer described his pants as green), all details of an innocuous nature. See *Florida* v. *J.L.*, *supra* at 272 (tip failed reliability test in its assertion of illegality); *Commonwealth* v. *DeJesus*, 72 Mass. App. Ct. 117, 120 (2008). Compare *Commonwealth* v. *Fraser*, 410 Mass. 541, 546-547 (1991) (patfrisk justified where even with unverified tip, when police arrived at scene they were outnumbered, defendant bent "down behind a truck in a manner suggesting that he might be picking something up or putting something down, and then [he] confronted the officer with his hands in his pockets"); *Commonwealth* v. *Johnson*, 36 Mass. App. Ct. 336, 337 (1994) (patfrisk justified when officer approached woman who was reported carrying a handgun in her purse and who was shouting obscenities, gesturing in angry manner at man across the street, and ignoring officer's warning to quiet down).

We do not minimize the potential seriousness of a report such as was present here. Nor do we dispute that the investigating officer acted reasonably in relation to the information supplied to him via the police radio broadcast. We recognize that "[w]hen a tip . . . concerns the possession of a firearm, it deserves the immediate attention of law enforcement officials." *Commonwealth* v. *Stoute*, 422 Mass. at 790. Having received a report of an armed man, it would have been poor police work had the officer here left the scene without making any inquiries. However, the seriousness of the report received by the officer on the scene does not relieve the Commonwealth of the burden of establishing the veracity of that report and the constitutional underpinning for the officer's actions at the suppression hearing. This the Commonwealth failed to do.[3]

In sum, the judge erred in determining that this stop and frisk

---

[3]Nothing in *Commonwealth* v. *McCauley*, 11 Mass. App. Ct. 780, 781-782 (1981), is to the contrary. There an anonymous report to police was of a man repeatedly dropping a gun on the floor of a crowded café. Viewed in context, there were factors not present here that justified the stop and frisk, especially (1) a very detailed description of the defendant that implied a close, firsthand observation by the reporter, and (2) the particular nature of the scene — a bar at midnight — implying probable liquor consumption which, in the presence of other patrons, was strongly suggestive of a carelessness with firearms, together with the possibility of intoxication, that made the imminence and risk of harm quite real.

was based on reasonable suspicion. The order denying the defendant's motion to suppress is vacated, and an order shall enter allowing that motion. The judgments of conviction are reversed.

*So ordered.*