NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-572                                          Appeals Court

COMMONWEALTH  vs.  JOHN C. DEPIERO.

No. 13-P-572.

Middlesex.      January 10, 2014. - February 19, 2015.

Present: Kantrowitz, Vuono, & Sullivan, JJ.


Constitutional Law, Investigatory stop, Reasonable suspicion.
    Search and Seizure, Reasonable suspicion.  Motor Vehicle,
    Operating under the influence.  Practice, Criminal, Motion
    to suppress.


    Complaint received and sworn to in the Cambridge Division
of the District Court Department on August 11, 2011.

    A pretrial motion to suppress evidence was heard by
Antoinette E. McLean Leoney, J., and the case was heard by
Joseph W. Jennings, III, J.


    Jane D. Prince (Randy S. Chapman with her) for the
defendant.
    Radu Brestyan, Assistant District Attorney, for the
Commonwealth.


    VUONO, J.  Following a jury-waived trial, the defendant was

convicted of operating a motor vehicle while under the influence

of alcohol (second offense).  On appeal, he principally contends

that the motion judge erred in denying his motion to suppress

evidence obtained during what he claims was an unlawful investigatory stop of his automobile.[1]  The stop was prompted by an anonymous telephone call concerning a "drunk" driver.  We conclude that the motion to suppress was properly denied and we affirm the judgment.[2]

---

[1] The defendant also claims that the motion judge erroneously admitted in evidence a "turret" tape recording containing a portion of the 911 call and other police communications.  This issue requires little discussion.  As an initial matter, as the judge observed, "[t]he law of evidence does not apply with full force at motion to suppress hearings."  Mass. G. Evid. § 1101(d) (2014).  And, in any event, the officer's testimony that he was familiar with the procedure followed by the Massachusetts State police regarding incoming 911 calls and recognized the recording to be that of a 911 emergency call provided a sufficient foundation to authenticate the recording.  See Commonwealth v. Siny Van Tran, 460 Mass. 535, 546 (2011).  There was no error.

[2] We previously decided this appeal in an unpublished memorandum and order pursuant to our rule 1:28, affirming the denial of the defendant's motion to suppress.  See Commonwealth v. Depiero, 85 Mass. App. Ct. 1125 (2014).  We concluded that the stop of the defendant's vehicle was supported by reasonable suspicion because the officer (Trooper Dwyer) who made the stop was aware that the defendant's license was subject to curfew restrictions and had observed the defendant driving his motor vehicle in violation of the curfew.  In reaching our conclusion we relied on a "turret" tape recording, which was introduced in evidence.  On that recording, the dispatcher stated that there were hour restrictions on the defendant's driver's license.  However, contrary to the argument the Commonwealth presented in its brief and at oral argument, the tape recording does not establish that the information pertaining to the license restriction was broadcast prior to the stop as opposed to during or after the stop.  Because only facts that were known to the officer at the time of the stop may be considered, the fact that the defendant's license was restricted could not provide a justification for the stop.  See Commonwealth v. Anderson, 461 Mass. 616, 623 (2012).

Facts.[3]  At approximately 2:00 A.M. on August 11, 2011, an unidentified man made a 911 telephone call which was received by a State police emergency operator in Framingham.  After informing the caller that the 911 line is recorded, the operator asked the caller, "[W]hat is your emergency?"  The caller replied, "Just a call, you got a drunk driver on Memorial Drive near Harvard Square and I've got his license number, but he's swerving all over the road."  The operator immediately transferred the call to the State police barracks in Brighton.  The caller stayed on the line and then spoke to a dispatcher who identified himself as Trooper Usom.  The motion judge found that the caller provided the color, make, and license plate number of the vehicle in question to Trooper Usom.[4]  Trooper Usom then

_____

    We commend the defendant for bringing this issue to our attention by filing a petition for rehearing.  We also express our disappointment that the Commonwealth has, as the defendant asserts, "muddled" the record. See generally Commonwealth v. Pagan, 73 Mass. App. Ct. 369, 375-376 (2008). The appeal will not be reheard but in response to the petition and a letter submitted by the Commonwealth, we have withdrawn our previously issued memorandum and order, and this opinion follows that action.

    [3] The summary of facts is based on the motion judge's findings, supplemented with undisputed testimony provided by Massachusetts State police Trooper John Dwyer, the Commonwealth's sole witness at the hearing.  See Commonwealth v. Torres, 433 Mass. 669, 670 (2001).  The judge explicitly credited Trooper Dwyer's testimony.

    [4] These findings were based on testimony from Trooper Dwyer; the Commonwealth did not introduce a recording of the conversation between the caller and Trooper Usom.  According to

initiated the following broadcast: "H5, H5 patrols, one call erratic operation Memorial Drive westbound passing the Weeks Footbridge on MA PC 7785AN . . . [t]hat vehicle comes out of Belmont, the owner is on probation for drunk driving." In a subsequent broadcast, Trooper Usom provided the address for the registered owner of the motor vehicle.[5]

State police Trooper John Dwyer was on patrol on Route 2 east of Arlington when he heard Trooper Usom's broadcast. He responded by driving to Belmont and arrived in the vicinity of the defendant's home within five minutes. He saw the vehicle described by the broadcast pass him and pull into the driveway at 207 Cross Street and he observed that it was being driven in a normal manner. After the defendant pulled into the driveway, Trooper Dwyer parked his cruiser about five feet behind the defendant's vehicle and activated the cruiser's emergency lights.[6] The defendant stepped out of his vehicle and nearly

---

Trooper Dwyer, the Brighton barracks does not record 911 calls. Trooper Usom did not testify at the suppression hearing.

[5] The judge found that Trooper Dwyer conducted his own investigation and, as a result, obtained the defendant's address in Belmont. This finding of fact appears inconsistent with the radio broadcast, which indicates that Trooper Usom provided the address. As nothing turns on this discrepancy, we ignore it.

[6] The parties do not dispute that the stop occurred when Trooper Dwyer activated his cruiser's lights. See Commonwealth v. Smigliano, 427 Mass. 490, 491-492 (1998) (activation of emergency lights constitutes a seizure requiring justification because "a reasonable person, on the activation of a police

fell to the ground. When Trooper Dwyer approached the defendant he noticed that the defendant's hair was "wild and unkept [sic]" and detected an odor of alcohol. Upon request, the defendant produced his license and registration without difficulty. In response to Trooper Dwyer's questions, the defendant said that he was coming from Cambridge and had driven on Soldier's Field Road and not Memorial Drive. He also admitted that he had consumed one to two drinks. The defendant agreed to perform field sobriety tests, which he failed. Trooper Dwyer then concluded that the defendant had been operating his motor vehicle while under the influence of alcohol, and arrested him.[7]

In denying the defendant's motion to suppress, the judge concluded that the 911 call was placed by "an ordinary citizen -- not an informant -- who had witnessed a motor vehicle infraction, namely, a motor vehicle driving erratically on the roadway." Thus, even though the caller was not identified -- or identifiable -- the judge implicitly reasoned that the tip bore adequate indicia of reliability, because the caller's report was based on his personal knowledge, and the information he provided could be accorded more weight than information from an

_____

car's blue lights, would believe that he or she is not free to leave").

[7] The defendant does not challenge the sufficiency of the evidence, which also included the results of a Breathalyzer test indicating a blood alcohol level of 0.18.

(anonymous) informant as a result of his status as an ordinary citizen.[8]  The judge also found that the information provided by the caller had been corroborated by the police.  She then concluded that the stop was lawful because it was supported by reasonable suspicion.

Discussion.[9]  To justify a motor vehicle stop under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, the Commonwealth must demonstrate that the police had reasonable suspicion "based on specific, articulable facts and reasonable inferences therefrom, that [the operator] of the . . . motor vehicle had committed, was committing, or was about to commit a crime."[10] Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996).  Information from an anonymous 911 call may warrant reasonable suspicion if it is shown to be reliable.[11]  In Massachusetts we

---

[8] Although we conclude that the motion to suppress was properly denied, we do not agree that an "ordinary citizen" is more reliable than an anonymous informant in all circumstances.

[9] "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [her] ultimate findings and conclusions of law.'"  Commonwealth v. Costa, 448 Mass. 510, 514 (2007), quoting from Commonwealth v. Scott, 440 Mass. 642, 646 (2004).

[10] The defendant does not argue that the stop was unlawful because it occurred in his driveway.

[11] There is authority for the proposition that a tip conveyed via an emergency number like 911 carries heightened

indicia of reliability.  A number of courts, including the United States Supreme Court, have considered this issue under the less stringent totality of the circumstances test and concluded that because police emergency operators often record such calls and have the means to determine the telephone number from which a call is placed, a person calling 911 inherently risks their anonymity.

In a divided opinion, the United States Supreme Court recently concluded that while 911 calls are not per se reliable, a "caller's use of the 911 system is . . . one of the relevant circumstances that, taken together, justified the officer's reliance on the information reported in the 911 call." Navarette v. California, 134 S. Ct. 1683, 1690 (2014).  In that case, an unidentified 911 caller reported being run off the road by another vehicle and provided the vehicle's location, direction, make, and license plate number.  Id. at 1686-1687.  In considering the call's reliability, the Court observed that numerous technological and regulatory advancements guard against false 911 reports, including that 911 calls can be recorded and the Federal Communications Commission requires that cellular telephone carriers "relay the caller's phone number to 911 dispatchers" and "identify the caller's geographic location with increasing specificity." Id. at 1689-1690.  The Court also noted that making a false 911 report subjects a caller to prosecution. Ibid.  False 911 reports are also subject to prosecution in Massachusetts.  See G. L. c. 269 § 14B(a).

However, the four dissenting justices in Navarette discounted, inter alia, the reliability of 911 calls.  The dissent criticized the majority's conclusion that the "ease of identifying 911 callers" enhances the reliability of 911 calls, pointing out that "[t]here is no reason to believe that your average anonymous 911 tipster is aware that 911 callers are readily identifiable."  134 S. Ct. at 1694 (Scalia, J., dissenting).  Reasoning that technological and regulatory developments can only lessen the likelihood of false reports where callers are aware of such developments and adjust their behavior accordingly, the dissent concluded that an anonymous 911 call reporting "generally available" details does not, without more, support reasonable suspicion. Id. at 1693.

Numerous State appellate courts are in accord with the majority's reasoning.  See, e.g., Grant v. State, 139 So. 3d 415, 418 (Fla. Dist. Ct. App. 2014) (whether tip came in via 911 call is relevant to reasonable suspicion determination); People v. Linley, 388 Ill. App. 3d 747, 750 (2009) (most people likely aware that calling 911 places their anonymity at risk); State v.

apply the Aguilar-Spinelli test to determine whether an anonymous tip is reliable. See Commonwealth v. Costa, 448 Mass. 510, 515 n.9 (2007). "To establish the reliability of the information under art. 14 . . . the Commonwealth must show the basis of knowledge of the source of the information (the basis of knowledge test) and the underlying circumstances demonstrating that the source of the information was credible or the information reliable (the veracity test)." Commonwealth v. Anderson, 461 Mass. 616, 622 (2012), quoting from Commonwealth v. Mubdi, 456 Mass. 385, 395-396 (2010) (other citation omitted). Where the standard is reasonable suspicion, as opposed to probable cause, "a less rigorous showing in each of these areas is permissible." Ibid., quoting from Commonwealth v. Mubdi, supra at 396.

As an initial matter, there is no question that the dispatch described the motor vehicle with sufficient particularity such that Trooper Dwyer could be certain that the

---

Gamble, 218 N.J. 412, 433-434 (2014) (caller's use of 911 system contributes to reasonable suspicion).

Other State appellate courts have aligned with the dissent's reasoning, concluding that 911 calls do not carry heightened reliability where there is no evidence that the caller expected to be, or actually was, identifiable. See, e.g., Matthews v. State, 431 S.W.3d 596, 604 n.29 (Tex. Crim. App. 2014) (tip not reliable in part because there was no evidence that caller knew about "call sheet" nor that caller could actually be traced); State v. Saggers, 182 Wash. App. 832, 847 (2014) (distinguishing Navarette because 911 call was placed from gasoline station pay phone with no connection to caller).

vehicle he stopped was the same one identified by the caller. The dispatch identified the vehicle's color, make, license plate number, and the address of the registered owner. See Commonwealth v. Anderson, supra at 621. We also conclude that the caller's report was sufficient to support the inference that he had witnessed an incident of reckless driving and, therefore, the "basis of knowledge" test was satisfied.[12] See Commonwealth v. Lubiejewski, 49 Mass. App. Ct. 212, 214 (2000) (basis of the caller's knowledge properly was inferred from the report itself, which indicated firsthand observation of erratic operation). See also Commonwealth v. Costa, supra at 518 (basis of knowledge test satisfied where caller claiming to be in close proximity to suspect carrying concealed handgun provided suspect's location and described suspect's clothing in full); Commonwealth v. Anderson, supra at 622 (basis of knowledge test satisfied where caller reported personally witnessing "two black men get into a silver or gold Toyota Camry bearing a registration plate 22CO77"). Contrast Commonwealth v. Gomes, 75 Mass. App. Ct. 791, 792, 795 (2009) (caller's report of man holding gun in air not credited, in part because caller failed to report own location); Commonwealth v. Mubdi, supra at 396 (caller's basis of knowledge questioned where Commonwealth failed to introduce

---

[12] In fact, Trooper Dwyer testified that the caller was following the motor vehicle in question. However, the record does not disclose how Trooper Dwyer knew of that fact.

911 call showing that information was "derived from personal observation rather than hearsay or rumor").

We now turn to the veracity test. The question whether the police had an adequate basis for concluding the caller was reliable is a close one. Although the initial 911 call was recorded, the Commonwealth presented no evidence to establish that the caller was identifiable. There was no evidence that the telephone number used by the caller could be identified or that the caller otherwise knew the number could be traced. As the defendant points out, the absence of evidence demonstrating that the caller's anonymity was at risk has resulted in a finding of unreliability in a number of cases. See Commonwealth v. Mubdi, supra at 397 (Commonwealth failed to establish unidentified caller's reliability where there was "no reason to believe the caller needed to fear that he or she would be subject to a charge of filing a false report or any comparable consequence of providing false information to law enforcement"); Commonwealth v. Gomes, supra at 794 (investigatory stop based on a 911 emergency telephone call made by an "unidentified and unidentifiable" caller was unlawful).[13] Contrast Commonwealth v.

---

[13] As noted, Commonwealth v. Mubdi, 456 Mass. at 396-397 , and Commonwealth v. Gomes, 75 Mass. App. Ct. at 794-795, are distinguishable on the ground that the Commonwealth failed in those cases to establish the caller's basis of knowledge. In addition, there was no evidence in either case that the caller knew that his or her 911 call was being recorded.

Costa, 448 Mass. at 512-513 (reliability of anonymous telephone call established where the Commonwealth introduced evidence that the 911 emergency operator had identified the caller's telephone number and informed the caller that her cellular telephone number had been identified and that the call was being recorded).

However, the absence of evidence that the caller has placed his anonymity at risk does not preclude the Commonwealth from establishing the caller's reliability. "Where the caller is anonymous, there are at least two ways to establish the caller's reliability. The first is through independent corroboration by police observation or investigation of the details of the information provided by the caller." Commonwealth v. Anderson, 461 Mass. at 623. The "second way to establish the caller's reliability is by demonstrating that the caller had just witnessed a startling or shocking event, that the caller described the event, and that the description of the event was made so quickly in reaction to the event as reasonably to negate the possibility that the caller was falsifying the description or was carrying out a plan falsely to accuse another." Id. at 624.

Here, although Trooper Dwyer's observations of the defendant's vehicle did corroborate some of the information provided by the 911 caller, he did not observe any suspicious

behavior. However, even without sufficient corroboration, we conclude that the Commonwealth met its burden because it can be inferred that the 911 call was made contemporaneously with the caller's observation of apparent criminal activity, namely driving while intoxicated, and therefore, the caller was under the stress or excitement of a "startling or shocking event." Commonwealth v. Depina, 456 Mass. 238, 244 (2010).

The circumstances of this case are similar to those addressed by the Supreme Judicial Court in Commonwealth v. Anderson, supra. In that case, the court concluded that an anonymous caller who reported observing two men who appeared to have just committed a robbery make their getaway "passed the less rigorous veracity test needed for reasonable suspicion where there was [some] independent corroboration of the information furnished by the caller and where the call was made immediately after the startling event." Id. at 625. The court stated that "[w]hile the evidence does not reflect whether the caller knew of the robbery or saw the men wearing masks, we can infer the caller recognized that they appeared to have just committed a crime and were making their getaway; otherwise it would have made no sense to contact the police and provide the registration plate number of a departing vehicle." Id. at 623. The court analogized the call to an excited utterance and

concluded that the spontaneous and startled nature of the call heightened its reliability.  Id. at 625.

The same analysis applies here.  The danger of driving while intoxicated presents a grave danger to the public.  See generally Commonwealth v. Davis, 63 Mass. App. Ct. 88, 91 (2005).  The threat of immediate serious physical injury from a drunk driver is such that the call at issue was "spontaneous to a degree which reasonably negated premeditation or possible fabrication."  Commonwealth v. Anderson, supra at 624, quoting from Commonwealth v. Depina, 456 Mass. at 244.  Here, as in Anderson, the evidence supports the inference that the caller utilized the emergency number "911" for a valid reason, to report to the police what the caller understood to be a "drunk" driver operating a vehicle dangerously on a major thoroughfare, rather than for any malicious purpose that would lessen its reliability.  Commonwealth v. Anderson, supra at 623 n.9.  See Commonwealth v. Depina, supra at 245 (anonymous caller passed the veracity test where she reported a shooting in her backyard and witnessed a suspect fleeing, because the circumstances suggested that she did not intend to mislead the police).  Furthermore, as the court also noted in Anderson, "[i]f a person wants to harass an enemy by providing false information to the police that would trigger an investigative stop, the person is unlikely to wait until the caller has just seen someone flee a

crime scene."  456 Mass. at 625.  We think it equally unlikely that a person bent on mischief or harassment would wait until he or she observed an enemy drive a car, and then accuse him or her of dangerous driving.

The fact that the caller's report bore sufficient indicia of reliability does not end our analysis.  We must still determine whether the reliable tip created a reasonable suspicion that the crime of operating a motor vehicle while under the influence of alcohol had been or was being committed.[14] While there was no specific information provided by the caller regarding alcohol consumption, we can appropriately recognize that "swerving all over the road" is a significant indicator of drunk driving.[15]  Here, Trooper Dwyer could reasonably suspect that the behavior reported by the caller was consistent with

---

[14] The Commonwealth also argues that our decision in Commonwealth v. Davis, 63 Mass. App. Ct. at 90-91, renders the stop in this case reasonable under the emergency doctrine. Given our conclusion that the stop was supported by reasonable suspicion, we do not reach this argument.

[15] To be sure, the erratic and dangerous behavior reported by the 911 caller could have been caused by sudden illness or mere distraction, but our case law does not require an officer to exclude all possible innocent reasons for the conduct at issue. See Commonwealth v. DePeiza, 449 Mass. 367, 373 (2007) (that there may be an innocent explanation for the defendant's actions "does not remove [those actions] from consideration in the reasonable suspicion analysis").  Further, the 911 caller reported behavior falling within the ambit of what the United States Supreme Court considers "sound indicia of drunk driving," such as "driving all over the road" and "weaving all over the roadway."  Navarette v. California, 134 S. Ct. at 1690 (other citations omitted).

driving under the influence of alcohol and, because Trooper Dwyer knew that the defendant was on probation for drunk driving, he had the requisite reasonable suspicion to make an investigatory stop, even though he had not personally observed any suspicious behavior. See Commonwealth v. Gomes, 453 Mass. 506, 511-512 (2009) (officer's knowledge that defendant has history of similar crimes contributed to reasonable suspicion that defendant had, was in the process of, or was about to engage in that criminal behavior). See also Cypher, Criminal Practice and Procedure § 4.10, at 190 (4th ed. 2014) ("[T]he fact that a person has been previously convicted of a crime does not relegate the individual to the status of a second class citizen, yet the knowledge of the defendant's criminal background can be used as an additional factor in determining if there should be a brief threshold inquiry"). In sum, given the reliable report of a significant danger coupled with the knowledge of the defendant's criminal history, "the police would have been remiss had they not conducted an investigatory stop of this vehicle." Commonwealth v. Anderson, 461 Mass. at 625.

Judgment affirmed.