NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11893

COMMONWEALTH  vs.  JOHN C. DEPIERO.


Middlesex.     November 3, 2015. - January 4, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Constitutional Law, Investigatory stop, Reasonable suspicion.
Search and Seizure, Threshold police inquiry, Reasonable
suspicion.  Threshold Police Inquiry.  Motor Vehicle,
Operating under the influence.  Evidence, Anonymous
statement, Corroborative evidence.



Complaint received and sworn to in the Cambridge Division
of the District Court Department on August 11, 2011.

A pretrial motion to suppress evidence was heard by
Antoinette E. McLean Leony, J., and the case was heard by Joseph
W. Jennings, III, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Jane Prince (Randy S. Chapman with her) for the defendant.
Casey E. Silvia, Assistant District Attorney, for the
Commonwealth.
Daniel K. Gelb, for National Association of Criminal
Defense Lawyers, amicus curiae, submitted a brief.
Chauncey B. Wood, Dahlia S. Fetouh, Nancy A. Dinsmore, &
Benjamin R. Cox, for Massachusetts Association of Criminal
Defense Lawyers, amicus curiae, submitted a brief.

CORDY, J.  In January, 2013, after a bench trial, the defendant was convicted of operating a motor vehicle while under the influence of alcohol (second offense) in violation of G. L. c. 90, § 24 (1) (a) (1).  On appeal, he argues that the denial of his motion to suppress evidence obtained during a warrantless stop of his vehicle was error.

The stop, made by State police Trooper John Dwyer, was prompted by the receipt of an anonymous 911 call concerning an apparent drunk driver traveling on Memorial Drive in Cambridge. The defendant claimed that the stop was neither supported by reasonable suspicion nor made pursuant to an ongoing emergency. After a hearing, a judge denied the defendant's motion to suppress, concluding that Dwyer "had reasonable suspicion to conduct an investigatory stop."  The judge reasoned that "[t]he 911 call was from an ordinary citizen -- not an informant -- who had witnessed a motor vehicle infraction, namely, a motor vehicle driving erratically on the roadway."[1]

---

[1] The defendant objected to the introduction of the 911 call at the motion to suppress hearing because the Commonwealth had failed to authenticate the tape recording properly.  There was no error in admitting the 911 call.  See Mass. G. Evid. § 1101 (d) (2015) ("[t]he law of evidence does not apply with full force at motion to suppress hearings").  See also Commonwealth v. Siny Van Tran, 460 Mass. 535, 546 (2011) ("[a] proponent adequately lays the foundation for admission when a preponderance of the evidence demonstrates that the item is authentic").  The 911 call began with a statement that the

The Appeals Court affirmed the denial of the defendant's motion to suppress, but on different grounds.  Commonwealth v. Depiero, 87 Mass. App. Ct. 105, 106 (2015).  The Appeals Court concluded that the information bore sufficient indicia of reliability because the unidentified caller's observations were made "under the stress or excitement of a 'startling or shocking event.'"  Id. at 112, quoting Commonwealth v. Depina, 456 Mass. 238, 244 (2010).  Dwyer could therefore rely on the information in establishing reasonable suspicion to conduct an investigatory stop.  Id. at 113.

Subsequent to the judge's ruling on the defendant's motion to suppress, the United States Supreme Court released its decision in Navarette v. California, 134 S. Ct. 1683 (2014), regarding the weight properly afforded to the reliability of information provided to police over the 911 emergency call system by an anonymous caller.  The Court concluded that because of technological and regulatory developments, "a reasonable officer could conclude that a false tipster would think twice before using [the 911] system," and therefore its use is "one of

---

caller had reached the "State [p]olice, 911."  State police Trooper John Dwyer testified that he was familiar with the procedure by which the State police treat incoming communications, and that such procedure was followed on the night in question.  Moreover, having reviewed the tape recording of the communications, the information contained in the portion of the 911 call that was recorded was consistent with the information later communicated to Dwyer by the dispatcher.

the relevant circumstances that, taken together, [can justify an] officer's reliance on the information reported in the 911 call."  Id. at 1690.  We granted the defendant's application for further appellate review to consider whether the police had reasonable suspicion to conduct an investigative stop of his vehicle, and whether, under art. 14 of the Massachusetts Declaration of Rights, we would afford weight similar to that afforded by the Supreme Court to the reliability of anonymous 911 telephone callers.

We decline to endorse the Supreme Court's reliance on the use of the 911 system as an independent indicium of reliability for an anonymous tip.  That being said, the information gleaned from the anonymous call in the present case, corroborated by other information, was sufficiently reliable to warrant a finding that the officer had reasonable suspicion to stop the defendant's vehicle.  The denial of the defendant's motion to suppress is therefore affirmed.[2]

1.  Background.  We summarize the facts found by the motion judge, supplemented with facts supported in the record.[3]  On

---

[2] We acknowledge the amicus briefs submitted by the Massachusetts Association of Criminal Defense Lawyers and the National Association of Criminal Defense Lawyers.

[3] "[A]n appellate court may supplement a motion judge's subsidiary findings with evidence from the record that 'is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony,' Commonwealth v.

August 11, 2011, at approximately 2 A.M., Trooper Dwyer received a dispatch concerning a black Mercedes Benz motor vehicle operating erratically and unable to maintain a lane on Memorial Drive in Cambridge.  The dispatch was prompted by a 911 telephone call received by a State police emergency operator in Framingham from an unidentified caller.

The tape recording, played during the motion to suppress hearing, indicates that the 911 caller was first informed that "this line is recorded," before the emergency operator asked the caller, "[W]hat is your emergency?"  The caller replied, "Just a call, you got a drunk driver on Memorial Drive near Harvard Square and I've got his license number, but he's swerving all over the road."  The call was then relayed to the State police barracks in the Brighton section of Boston, where it was answered by Trooper Usom, who contacted Dwyer.

Usom's dispatch to Dwyer referred to "one call" for "erratic operation" of a motor vehicle, and provided the make, color, and registration number for the vehicle.  Usom reported the Belmont address to which the vehicle was registered, and

---

Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008), so long as the supplemented facts 'do not detract from the judge's ultimate findings.'"  Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015), quoting Commonwealth v. Jessup, 471 Mass. 121, 127-128 (2015).  The motion judge found "Dwyer's testimony to be credible."

that the owner of the vehicle in question was "on probation for drunk driving."

On receiving the dispatch, Dwyer drove to the defendant's address, which took approximately five minutes. After a few minutes the defendant's vehicle arrived, and Dwyer observed it being driven for less than one minute before it turned into the driveway of the Belmont address. Dwyer did not see the defendant operate the vehicle in an illegal or unreasonable manner. Dwyer turned into the driveway behind the defendant and activated his cruiser's emergency lights.

The defendant almost fell on exiting the vehicle. Dwyer "noticed [that the defendant's] hair was wild and unkept [sic]," as well as the "odor of an alcoholic beverage." The defendant produced his driver's license and vehicle registration. Dwyer asked if the defendant had been drinking, to which the defendant claimed to have had two drinks. Dwyer conducted field sobriety tests, which the defendant failed. He concluded that the defendant was operating his vehicle under the influence of alcohol, and placed the defendant under arrest. At the station, the defendant agreed to a breathalyzer test, which registered a blood alcohol level of 0.18. Ultimately, he was charged with operating a motor vehicle in violation of a license restriction, G. L. c. 90, § 10; and operating a motor vehicle while under the

influence of liquor, second offense, G. L. c. 90, § 24 (1) (a) (1).

2. Discussion. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact unless they are clearly erroneous but independently review the judge's ultimate findings and conclusions of law." Commonwealth v. Anderson, 461 Mass. 616, 619, cert. denied, 133 S. Ct. 433 (2012).

An investigatory stop is justified under art. 14 if the police have "reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom, that an occupant of the . . . motor vehicle had committed, was committing, or was about to commit a crime." Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996). Where, "as here, a police radio broadcast directs officers to make an investigatory stop of a motor vehicle, the stop is lawful only if the Commonwealth establishes both the indicia of reliability of the transmitted information and the particularity of the description of the motor vehicle." Commonwealth v. Lopes, 455 Mass. 147, 155 (2009). Here, the dispatch contained adequate particularity: it identified the make, color, and registration number of the motor vehicle and the address attributed to the owner of the vehicle. See Commonwealth v. Mubdi, 456 Mass. 385, 395 (2010). Therefore, the question whether Dwyer had reasonable suspicion

to conduct the investigatory stop of the defendant's vehicle is contingent on whether the information prompting the dispatch bore sufficient indicia of reliability.

Under the Aguilar-Spinelli test, "[t]o establish the reliability of the information under art. 14 . . . , 'the Commonwealth must show the basis of knowledge of the source of the information (the basis of knowledge test) and the underlying circumstances demonstrating that the source of the information was credible or the information reliable (veracity test).'" Anderson, 461 Mass. at 622, quoting Lopes, supra at 155-156. See Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964). Where the required standard is reasonable suspicion rather than probable cause, "a less rigorous showing in each of these areas is permissible." Mubdi, 456 Mass. at 396, quoting Commonwealth v. Lyons, 409 Mass. 16, 19 (1990). "Independent police corroboration may make up for deficiencies in one or both of these factors." Commonwealth v. Costa, 448 Mass. 510, 514-515 (2007), quoting Lyons, supra.

As an initial matter, we conclude that the basis of knowledge test was satisfied as to the 911 caller, as "[a]n eyewitness's report to police of [a] recent, firsthand observation satisfies the basis of knowledge prong." Anderson, 461 Mass. at 622, quoting Depina, 456 Mass. at 243. See Anderson, supra (basis of knowledge test satisfied where caller

"personally witnessed two black men get into a silver or gold Toyota Camry bearing a registration plate 22CO77"). The degree of detail provided to the Framingham emergency operator, and then related by the dispatcher, including the caller's reported observation of the driver "swerving all over the road" at a specific location on Memorial Drive, the registration number, as well as the make and model of the motor vehicle, are sufficient to establish that the information derived from the personal observations of the 911 caller. See Commonwealth v. Alfonso A., 438 Mass. 372, 374 (2003) (basis of knowledge test satisfied where "it is apparent that the informant was reporting his own observation"); Commonwealth v. Lubiejewski, 49 Mass. App. Ct. 212, 214 (2000) (test satisfied where informant "described the operation of the truck as it was being driven along the highway").

We therefore turn to the reliability prong. "The veracity test is more difficult for the Commonwealth to satisfy where, as here, the caller was anonymous. Because the caller was anonymous, there could be no evidence regarding the caller's past reliability or reputation for honesty." Anderson, 461 Mass. at 622.

The Commonwealth urges us to incorporate into our art. 14 jurisprudence[4] the Supreme Court's recent decision in Navarette, in which the Court, in a divided opinion, held that the use of the 911 emergency system itself is an "indicator of veracity." Navarette, 134 S. Ct. at 1689. The Court's reasoning, as noted, was grounded in technological and regulatory developments regarding the 911 emergency call system (making it easier to identify telephone numbers of callers), coupled with the fact that false tipsters are subject to prosecution. Id. at 1689-1690. Although Massachusetts also prosecutes false 911 reports, see G. L. c. 269, § 14B (a), and we have held in various contexts that a citizen informant who is identifiable is deserving of greater consideration than that of truly anonymous sources, see, e.g., Costa, 448 Mass. at 515, we are not inclined at this time to attribute veracity to all 911 callers. As the dissenting Justices in Navarette pointed out, even if the police are able to recover the telephone number and identity of 911 callers, "it proves absolutely nothing . . . unless the anonymous caller was aware of that fact. It is the tipster's belief in anonymity, not its reality, that will control his

---

[4] Article 14 of the Massachusetts Declaration of Rights provides greater protection in this area than does the Fourth Amendment to the United States Constitution. Commonwealth v. Upton, 394 Mass. 363, 373 (1985).

behavior." Navarette, 124 S. Ct. at 1694 (Scalia, J., dissenting). We agree.

The caller in this case was aware that his call was being recorded; there is no way to know, however, based on the record before us, whether the caller had reason to believe that he might be identified or that the telephone that he was using might be traced back to him, such that it could affect his behavior or the veracity of the information he provided.[5] See Anderson, 461 Mass. at 622, quoting Mubdi, 456 Mass. at 397 (where no evidence presented to caller that he or she was identifiable by police, there is "no reason to believe the caller needed to fear he or she would be subject to a charge of filing a false report or any comparable consequence of providing false information to law enforcement"). Contrast Costa, 448 Mass. at 517 ("By providing information to the police after knowing that her call was being recorded, and that the number she was calling from had been identified, . . . the caller placed her anonymity sufficiently at risk such that her reliability should have been accorded greater weight than that

_____

[5] In the "Frequently Asked Questions" portion of the Web site of the Executive Office of Public Safety and Security, http://www.mass.gov/eopss/agencies/state-911/e911/trng-and-progs/faq.html [http://perma.cc/2HRM-5HUK], those who inquire about the 911 emergency call system are advised that the system may or may not be able to identify the phone numbers of persons calling into it and the locations of their telephones, but callers should "[a]ssume the 9-1-1 call taker does not know your location" or "your [tele]phone number" (emphasis in original).

of an anonymous informant").  We therefore decline to credit any indicia of reliability to the unidentified caller's information merely because the information was transmitted in the form of a 911 telephone call.

However, even where a 911 telephone call is anonymous, the Commonwealth can still establish a caller's reliability "through independent corroboration by police observation or investigation of the details of the information provided by the caller. . . . Independent corroboration is relevant only to the extent that it was known to the police before the stop was initiated" (citations omitted).  Anderson, 461 Mass. at 623.  See Commonwealth v. Barros, 435 Mass. 171, 178 (2001).[6]

---

[6] The Appeals Court relied on the "excited utterance" theory to conclude the 911 call bore adequate indicia of reliability, a theory not raised in the trial court.  Commonwealth v. Depiero, 87 Mass. App. Ct. 105, 112-113 (2015).  See Commonwealth v. Anderson, 461 Mass. 616, 624-625, cert. denied, 133 S. Ct. 433 (2012), quoting Commonwealth v. Depina, 456 Mass. 238, 240 (2010).

Although we may consider this issue despite it being raised for the first time on appeal, see Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997), the excited utterance theory is inapposite in the present case, where the only information regarding the occurrence of any criminal conduct came from the 911 caller.  This is unlike the circumstances in Anderson, supra at 619-620, 625, where police already had responded to a report of a store robbery by two men matching the description of people an anonymous caller subsequently described as getting into a particular vehicle, and in Depina, supra at 240, where police had received a request for an ambulance prior to receiving an anonymous tip reporting that the caller had heard gunshots in the backyard.

We conclude that the police observation and investigation in this case adequately corroborated the details provided by the unidentified caller, such that the information exhibited "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop."  Anderson, supra at 623, quoting Florida v. J.L., 529 U.S. 266, 270 (2000).  First, Dwyer's observations corroborated the location of the driver at the time of the 911 call.  Dwyer, after consulting a map, determined that he would not have the time to intercept the defendant between the defendant's home in Belmont and the location where the erratic driving was reported on Memorial Drive in Cambridge.  Based on those calculations, he drove directly to the defendant's home, which took approximately five minutes.  Within a few minutes of his arrival, Dwyer observed and identified a vehicle that matched the unidentified caller's description arriving at the address to which he had been sent.  See Costa, 448 Mass. at 518 (police arrived within minutes of

---

Moreover, where there was no finding below, we have reviewed the tape of the 911 call, and perceive nothing particularly excited in the unidentified caller's tone or nature.  See Commonwealth v. Santiago, 437 Mass. 620, 624-625 (2002) (to determine if statement satisfies excited utterance exception, we look to "whether the declarant displayed a degree of excitement").  Although drunk driving presents a "grave danger" to the public, Commonwealth v. Davis, 63 Mass. App. Ct. 88, 91 (2005), and thus may, in some instances, cause a 911 caller's declaration to warrant consideration as an excited utterance, the caller here introduced the reason for dialing 911 as "[j]ust a call. . . ."  In any event, we discern no indicia of reliability from the unidentified caller's state of mind.

anonymous caller's tip, and "were able to corroborate many of the [albeit innocent] details provided by the caller"). Second, the fact that Dwyer was informed that the defendant was on probation for the same type of criminal activity of which he was suspected further corroborated the anonymous call. See Commonwealth v. Germain, 396 Mass. 413, 418 (1985) (defendant's record of recent convictions for similar crimes indicate reliability of anonymous tip under Aguilar-Spinelli analysis). These details provide a level of corroboration beyond that of "innocent" or easily obtainable facts, see Alvarado, 423 Mass. at 272, and the information contained in the 911 call therefore passed the less rigorous veracity test needed under our reasonable suspicion analysis. See Lyons, 409 Mass. at 19.

Even armed with a reliable tip that it was indeed the defendant's motor vehicle that was driving erratically at 2 A.M., Dwyer's investigative stop of the defendant's vehicle was justified only if the information created a reasonable suspicion that "criminal activity may be afoot," Terry v. Ohio, 392 U.S. 1, 30 (1968); in other words, that the driver of a motor vehicle "had committed, was committing, or was about to commit a crime." Alvarado, supra at 268. We need not decide whether a single instance of erratic driving may not be a crime, because the information provided by the unidentified caller regarding the defendant "swerving all over the road," coupled

with the information about the defendant being on probation for a similar crime, was sufficient to create a reasonable suspicion of criminal conduct, permitting Dwyer to make the stop even without seeing any suspicious behavior personally.  See Commonwealth v. Gomes, 453 Mass. 506, 511 (2009) (officer's knowledge of defendant's previous arrests on drug charges was factor for consideration in justifying stop).  Indeed, "[i]n these circumstances, the police would have been remiss had they not conducted an investigative stop of [the defendant's] vehicle."  Anderson, 461 Mass. at 625.[7]

3.  Conclusion.  We affirm the motion judge's denial of the defendant's motion to suppress, albeit for reasons different than those relied on by the Appeals Court.

So ordered.

------

[7] In light of the conclusion that the stop of the defendant's vehicle was supported by reasonable suspicion, we need not reach the Commonwealth's argument, based on Davis, 63 Mass. App. Ct. at 90-91, that the stop was reasonable under the emergency doctrine.