LOWY, J. (concurring).
I agree with the court that "the warrantless search was not justified under the emergency aid exception." Ante at ----, 119 N.E.3d at 270. I also agree that the search was not justified under the probable cause and exigent circumstances exception "[b]ecause officers lacked a reasonable basis to believe that an exigency existed in unit 5A." Id. at ----, 119 N.E.3d at 273. But unlike the court, I am convinced that the officers had probable cause to enter the apartment.
"Reasonableness must be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis" (quotation omitted). Commonwealth v. Kaeppeler, 473 Mass. 396, 402-403, 42 N.E.3d 1090 (2015), quoting Commonwealth v. Townsend, 453 Mass. 413, 425-426, 902 N.E.2d 388 (2009). When police act on information from a private citizen, "the Commonwealth must show the basis of knowledge of the source of the information (the basis of knowledge test) and the underlying circumstances demonstrating that the source of the information was credible or the information reliable (veracity test)." Commonwealth v. Depiero, 473 Mass. 450, 454, 42 N.E.3d 1123 (2016), quoting *277 Commonwealth v. Anderson, 461 Mass. 616, 622, 963 N.E.2d 704, cert. denied, 568 U.S. 946, 133 S.Ct. 433, 184 L.Ed.2d 265 (2012).
Here, the court concedes that "the basis of the 911 caller's firsthand knowledge was apparent from the initial tip itself." Ante at ----, 119 N.E.3d at 275. However, the court then concludes that the caller's veracity has not been established. Id. at ----, --- N.E.3d at ----. I disagree.
The court acknowledges that the caller "was aware that officers could identify her" and that Sergeant Michael Simard of the Lawrence police department "ultimately spoke with the caller by telephone to discuss her observations." Ante at ----, 119 N.E.3d at 275. It then concludes that " 'knowledge of the informant's "identity" and "whereabouts," ' are generally 'not ... adequate standing alone to confirm the informant's reliability.' " Id., quoting **623 Commonwealth v. Alfonso A., 438 Mass. 372, 376, 780 N.E.2d 1244 (2003). But this is not a situation in which the police merely knew the informant's identity. Nor is it a situation in which the informant knew theoretically that the police had the ability to contact her by telephone. Cf. Commonwealth v. Costa, 448 Mass. 510, 517, 862 N.E.2d 371 (2007) (reliability of caller who knew "that her call was being recorded, and that the number she was calling from had been identified, ... should have been accorded greater weight than that of an anonymous informant"). Here, police did contact the informant by telephone, and the informant responded by continuing to cooperate and by providing significant additional information. The caller also used a technical term, "racking," to describe what she heard, and she explained that she was familiar with the sound because of personal experience. See Alfonso A., supra (use of detail "remains a factor in the over-all assessment of the informant's reliability").[1]
This reliable informant told police that she had observed two men with a gun enter a building at a specified address, and she claimed to have heard one of the men load a gun.[2] It is unusual for an individual to load a gun on the threshold of a private residence. To do so in broad daylight accompanied by another individual only increases the unlikeliness that the firearm was being loaded for innocent purposes. As the court correctly observes, "loading a handgun in public prior to entering a residential building ... raise[s] valid concerns about the possibility of imminent criminal conduct." Ante at ----, 119 N.E.3d at 275.
In addition to having reliable information from the caller that a gun was being loaded in public, the police also knew about an ongoing investigation into home invasions in Lawrence. And when **624 they reached the address that the caller named, a man *278 emerged from the building, only to retreat inside when an officer with a drawn gun told him to show his hands. The police tried to open the door that the man had reentered, but it was locked. There are many reasons why an individual might flee in the presence of the police. See Commonwealth v. Warren, 475 Mass. 530, 540, 58 N.E.3d 333 (2016) (observing that black male, "when approached by the police, might just as easily be motivated by the desire to avoid the recurring indignity of being racially profiled as by the desire to hide criminal activity"). Nonetheless, it would seem to be an unusual occurrence when a person who is told by a police officer with a drawn weapon to show his hands ignores the command and reenters a residence, locking the door behind him. The fleeing man here, combined with the tip that a gun was being loaded in public and the knowledge of prior home invasions, gave the police probable cause.[3]
For the foregoing reasons, I concur.

I assume for purposes of my analysis, as does the court, that the conversation Sergeant Michael Simard of the Lawrence police department had with the caller took place before the officers entered the apartment. A recording with which we were provided, but to which the motion judge did not have access, suggests that this conversation might have occurred after the warrantless entry. See ante at note 5.

The court states that, "[a]ccording to Simard, the caller did not see a firearm." Ante at ----, 119 N.E.3d at 265. But according to the motion judge's factual findings, which we must accept unless clearly erroneous, "[t]he caller reported that while coming down her street she observed 'two guys with a gun' at 7 Royal Street." That finding was not clearly erroneous. Although Simard testified that the caller never said she had observed a gun, Sergeant Joseph Cerullo of the Lawrence police department testified that the caller did say she had observed a gun. The motion judge was free to credit Cerullo's testimony over that of Simard. Moreover, the 911 recording, which was played in open court, confirms that the caller said, "I seen two guys with a gun."

That the caller believed the men had a key to the premises does not alter my conclusion. It is not unusual for a crime in a home to be perpetrated by individuals who know the victims or have a means peaceably to enter the premises. See Commonwealth v. Middlemiss, 465 Mass. 627, 629, 989 N.E.2d 871 (2013) (defendant entered residence with key); Commonwealth v. Morgan, 460 Mass. 277, 285, 951 N.E.2d 14 (2011) (same). See also Commonwealth v. Phap Buth, 480 Mass. 113, 114, 101 N.E.3d 925, cert. denied, --- U.S. ----, 139 S.Ct. 607, 202 L.Ed.2d 439 (2018) (defendant, who had previously bought drugs from resident, entered when resident opened door for him); Commonwealth v. Doucette, 430 Mass. 461, 462-463, 720 N.E.2d 806 (1999) (defendant, who had been resident's friend, entered through unlocked door).