WESTGATE, COMMONWEALTH vs., 101 Mass. App. Ct. 548

 
 COMMONWEALTH vs. BRITTANY WESTGATE.

101 Mass. App. Ct. 548
 April 13, 2022 - August 19, 2022

Court Below: District Court, New Bedford Division
Present: Meade, Englander, & Grant, JJ.

 

No. 21-P-954.

Motor Vehicle, Operating under the influence. Practice, Criminal, Motion to suppress, Disclosure of identity of informer. Constitutional Law, Reasonable suspicion. Search and Seizure, Motor vehicle, Reasonable suspicion, Threshold police inquiry. Threshold Police Inquiry.

A District Court judge erred in allowing the criminal defendant's pretrial motion to suppress evidence of a 911 call to report an apparent "drunk driver," in which a man identified himself but a woman did not, where the degree of detail in the call, including the description of the defendant's vehicle, its direction of travel and location, and both callers' statements about its unsafe manner of operation, were sufficient to establish that the information derived from both callers' firsthand observations [551-552]; where the male caller's statements had sufficient indicia of reliability, given that he identified himself to the 911 dispatcher [552-553]; where the female caller's statements also had sufficient indicia of reliability, in that she was identifiable (i.e., the male caller knew who she was) and never refused to give her identifying information to the dispatcher (i.e., she was able and not unwilling to be identified) [553]; and where the statements in the two callers' report, taken together and considered in an ordinary, commonsense manner, provided reasonable suspicion that the driver of the vehicle in question was operating it while under the influence of intoxicating liquor [553-554]. 

Complaint received and sworn to in the New Bedford Division of the District Court Department on May 28, 2019. 

 A pretrial motion to suppress evidence was heard by Robert S. Ovoian, J. 

 An application for leave to prosecute an interlocutory appeal was allowed by Kimberly S. Budd, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

 Julianne Campbell, Assistant District Attorney, for the Commonwealth.

Dana Alan Curhan for the defendant.

 GRANT, J. In this case we consider whether a 911 call reporting an apparent "drunk driver" who "almost hit a telephone pole" 

 Page 549 

provided sufficiently reliable information to justify a traffic stop under the reasonable suspicion standard, when two occupants of a moving vehicle participated in the call, but only one identified himself. We conclude that under the circumstances the information from the unidentified 911 caller had sufficient indicia of reliability. One of the callers in the vehicle identified himself and agreed that they would pull over and speak to police; the other, unidentified caller had reason to believe that she would be identified because, among other reasons, the identified caller knew who she was, and she told the dispatcher the color, make, and model of the callers' vehicle. Accordingly, we reverse the order suppressing the evidence, in which the judge found that police did not have reasonable suspicion to stop the defendant's car.

 Background. The following are facts found by the motion judge, supplemented by evidence from the record that is uncontroverted, see Commonwealth v. Edwards, 476 Mass. 341, 342 (2017), including our own review of the 911 recording, which is documentary evidence that we consider de novo, see Commonwealth v. Rand, 487 Mass. 811, 814 (2021). 

 At about 11:15 P.M. on May 27, 2019, the Dartmouth police dispatcher received a 911 call from a man and a woman on the same call and apparently occupying the same vehicle. The man reported that a "drunk driver" was operating a white Mercedes-Benz vehicle westbound on Route 6, passing specific side streets. During the call, the woman shouted that the Mercedes "almost hit a telephone pole." Asked for the license plate number of the Mercedes, the man recited it to the dispatcher.

 The dispatcher then broadcast that a "possible OUI" was being committed by a white Mercedes traveling on Route 6 westbound, giving its license plate number and noting that the 911 caller was following it. As the dispatcher was doing so, the male caller said, "We've got a cop right here." 

 Parked in a driveway alongside Route 6, Officer Darren Emond heard the radio dispatch. [Note 1] Emond then saw the Mercedes approaching, followed by a vehicle that he described only as a "sedan." After the Mercedes passed him, Emond pulled his cruiser behind it and followed it for a short distance, during which 

 Page 550 

the Mercedes changed lanes twice but did not commit any motor vehicle infraction. Emond then activated his cruiser's blue lights and stopped the Mercedes. 

 Meanwhile, the dispatcher asked the callers what kind of vehicle they were in, and the woman replied that they were in a silver Honda Civic. Just then, the woman said that the police officer "is pulling [the Mercedes] over right now." Then the dispatcher asked the man for his identifying information, and the man replied with his first and last names, spelling his last name, and stating his date of birth. At the request of the dispatcher, the man agreed that they would pull into the parking lot of a certain business. A few minutes later, the dispatcher broadcast the description of the callers' Honda. [Note 2] 

 In allowing the motion to suppress, the judge ruled that the male caller's report was sufficiently reliable because he identified himself to the dispatcher, but it did not support reasonable suspicion to stop the Mercedes because the male caller gave only conclusory information that the Mercedes was being operated by a "drunk driver." As to the female caller, the judge ruled that because she never told the dispatcher her name, her "shout-out" in the background of the 911 call that the Mercedes almost hit a telephone pole did not support a reasonable suspicion that the driver of the Mercedes was operating under the influence of intoxicating liquor. The Commonwealth appeals.

 Discussion. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact unless they are clearly erroneous but independently review the judge's ultimate findings and conclusions of law" (citation omitted). Commonwealth v. Depiero, 473 Mass. 450, 453 (2016). Under art. 14 of the Massachusetts Declaration of Rights, an investigatory stop of a motor vehicle is justified if police have "reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom, that an occupant of the . . . motor vehicle had committed, was committing, or was about to commit a crime" (citation 

 Page 551 

omitted). Depiero, supra. Where a police radio broadcast directs an officer to make an investigatory stop of a vehicle, the stop is lawful only if the Commonwealth establishes both the particularity of the vehicle's description and indicia of the reliability of the transmitted information. See Commonwealth v. Lopes, 455 Mass. 147, 155 (2009). Here, the broadcast relayed the color, make, license plate number, and location of the white Mercedes as reported by the male 911 caller, which established adequate particularity for the vehicle's description. See Depiero, supra at 454. Thus, whether police had reasonable suspicion for the investigatory stop of the defendant's vehicle depends on whether the information in the 911 call bore sufficient indicia of reliability. 

 In evaluating whether information provided to law enforcement, including 911 calls, is sufficient to justify a stop, the Supreme Judicial Court has employed the framework of the Aguilar-Spinelli test. See Depiero, 473 Mass. at 454, citing Spinelli v. United States, 393 U.S. 410 (1969), and Aguilar v. Texas, 378 U.S. 108 (1964). The Commonwealth is required to show "the basis of knowledge of the source of the information (the basis of knowledge test) and the underlying circumstances demonstrating that the source of the information was credible or the information reliable (veracity test)" (citation omitted). Depiero, supra. See J.A. Grasso, Jr., & C.M. McEvoy, Suppression Matters Under Massachusetts Law § 4-3[d][3] (2021 ed.). Where, as here, the required standard is reasonable suspicion rather than probable cause "a less rigorous showing in each of these areas is permissible" (citation omitted). Lopes, 455 Mass. at 156. A court considers whether there was reasonable suspicion for police to conduct a stop "in an ordinary, commonsense manner without hypertechnical analysis" (citation omitted). Commonwealth v. Gonzalez, 93 Mass. App. Ct. 6, 11 (2018). Under the "collective knowledge" doctrine, the judge considers the contents of the 911 call, even if not repeated by the dispatcher in the broadcast. Commonwealth v. Perez, 80 Mass. App. Ct. 271, 274 (2011). 

 a. Basis of knowledge. We conclude that the basis of knowledge test was satisfied as to both 911 callers. The degree of detail in the call, including the description of the Mercedes, its direction of travel and location, and both callers' statements about its unsafe manner of operation were sufficient to establish that the information derived from both callers' firsthand observations, and thus satisfied the basis of knowledge test. See Depiero, 473 Mass. at 454. See also Commonwealth v. Manha, 479 Mass. 44, 46 (2018) 

 Page 552 

(anonymous caller's report that another driver pointed gun at her on highway showed basis of knowledge, where she provided color, make, model, and registration number of vehicle). Contrary to the judge's conclusion, the female caller's shouting that the Mercedes "almost hit a telephone pole" indicated that she was describing her own firsthand observations. See Depiero, supra at 452-453 (911 call reporting that "drunk driver" was "swerving all over the road" established caller's basis of knowledge). See also Commonwealth v. Alfonso A., 438 Mass. 372, 374 (2003); Commonwealth v. Lubiejewski, 49 Mass. App. Ct. 212, 214 (2000). From the recording of the 911 call, as the judge noted, it is apparent (and certainly reasonably inferable) that both callers were traveling in the same vehicle and observing the same events as they happened. 

 b. Veracity of the callers' information. As to the veracity test, the Commonwealth may satisfy it by demonstrating that the source of the information is credible or that the information itself is reliable. See Depiero, 473 Mass. at 454. Here, this is not a case of an informant previously known to police; rather, the indicia of reliability flow from the nature of the informing witnesses -- ordinary citizens who identify themselves to the police. Our cases establish that information from citizens may of course meet the reliability prong for reasonable suspicion; it is "reasonable" for law enforcement to act where, as here, an identified, ordinary citizen provides firsthand evidence sufficient to establish reasonable suspicion that a crime is being committed. See Commonwealth v. Costa, 448 Mass. 510, 516 (2007) (explaining "[t]he rationale for according more weight to the reliability of identified persons"); Commonwealth v. Love, 56 Mass. App. Ct. 229, 234 (2002) ("these individuals do not have the protection from the consequences of prevarication that anonymity would afford" [quotation and citation omitted]). "[T]he reliability of citizen informants who are identifiable, but may not have been identified, is deserving of greater consideration than that of truly anonymous sources." Costa, supra at 515.

 Thus, as to the male caller, the judge concluded, and we agree, that his statements had sufficient indicia of reliability because he identified himself to the dispatcher. The defendant argues that the judge erred in finding the male caller credible, because he did not tell the dispatcher his name until after the officer stopped the defendant's Mercedes. From our own review of the recording of the 911 call, we note that within the span of a few seconds, the 

 Page 553 

female caller told the dispatcher that they were in a silver Honda Civic, then said that the officer was stopping the Mercedes, and then the male caller began telling the dispatcher his identifying information, which took at least thirty seconds. The fact that the female caller told the dispatcher that they were in a silver Honda Civic while the callers were within view of Emond's police vehicle meant that, as a practical matter, both callers were "identifiable." Costa, 448 Mass. at 515. Merely because the male caller began reciting his identifying information to the dispatcher after the precise instant that the officer initiated the stop of the defendant's Mercedes does not impact the male caller's reliability. Indeed, if the male caller had been a prankster giving false information to the dispatcher, it is highly unlikely that, once his prank had had its intended effect of causing police to stop the defendant's Mercedes, the caller would have given his identifying information to the dispatcher.

 As to the female caller, the judge concluded that the Commonwealth failed to demonstrate her reliability because it did not establish that she identified herself to police. We disagree. On the 911 call, the female caller never refused to give her identifying information to the dispatcher; she was not asked. She did participate in the call by shouting that the Mercedes driver almost hit a telephone pole, responding to the dispatcher that she and the male caller were in a silver Honda Civic, and stating that the officer "is pulling [the Mercedes] over right now." All that established that the female caller was "able and not unwilling to be identified." Love, 56 Mass. App. Ct. at 234. In Commonwealth v. Rodriquez, 70 Mass. App. Ct. 904, 905 (2007), a 911 caller who identified himself only as a driver for a certain taxicab company reported that another car had hit his taxicab and he was pursuing that car, giving its make, model, color, and license plate number. This court held that the caller's reliability was established because "little effort would later be required to contact [the taxicab company] and ascertain the identity of the driver." Id. Similarly, here, where the two 911 callers were traveling together in a vehicle and the male caller identified himself, as a practical matter the female caller was identifiable. Moreover, the 911 dispatcher's "failure . . . to obtain greater identifying information [about her] was likely due to the urgency of the situation. It was not a function of a request by the [female caller] to remain anonymous." Love, supra. 

 Although the judge found that the male caller was credible because he identified himself to the dispatcher, the judge 

 Page 554 

concluded that his description of the Mercedes as being driven by a "drunk driver" was too conclusory to support reasonable suspicion for police to stop the Mercedes. We think that parses too finely the two callers' statements to the 911 dispatcher. The male caller's report that the Mercedes was being driven by a "drunk driver" must be taken in context of the female caller's shouting that the Mercedes driver "almost hit a telephone pole." Taken together, and in an ordinary, commonsense manner, those two statements provide reasonable suspicion that the driver of the Mercedes was operating under the influence of intoxicating liquor. Cf. Depiero, 473 Mass. at 458 (reasonable suspicion based on caller's statements that defendant was driving "drunk" and "swerving all over the road," as well as information that defendant was on probation for similar crime). 

 The defendant further asserts that Emond should have "simply follow[ed] the vehicle for a longer time to determine if it was indeed being operated erratically." We disagree. "[T]he police would have been remiss" had they not stopped the defendant's Mercedes. Depiero, 473 Mass. at 458, quoting Commonwealth v. Anderson, 461 Mass. 616, 625, cert. denied, 568 U.S. 946 (2012). See Irwin v. Ware, 392 Mass. 745, 753 (1984). 

Order allowing motion to suppress reversed.

FOOTNOTES
[Note 1] At the suppression hearing, Emond testified that the dispatcher stated that the caller had reported that the drunk driver was "all over the road." In fact, the 911 call does not contain that statement, and so the judge properly did not consider it in assessing whether police had reasonable suspicion to stop the Mercedes. See Edwards, 476 Mass. at 343 n.3. We likewise do not consider that statement. 

[Note 2] At the suppression hearing, no evidence was adduced as to whether the sedan following the Mercedes was the 911 callers' Honda, whether it did pull into the parking lot, or whether police spoke to its occupants or obtained further information about the 911 callers' identities. Contrast Commonwealth v. Cox, 56 Mass. App. Ct. 907, 909 (2002) (statements of 911 caller describing "drunk" driver corroborated when caller stopped and identified herself to police). As a result, we do not consider any such subsequent events in determining whether there was reasonable suspicion for the stop. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.