NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-864

COMMONWEALTH

vs.

ZACHARY CRABILL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Zachary Crabill, was charged with operating under the influence (OUI), third offense, in violation of G. L. c. 90, § 24 (1) (a) (1), negligent operation in violation of G. L. c. 90, § 24 (2) (a), and a marked lanes violation, after he was questioned by police as a result of a 911 call that reported erratic driving. Crabill filed a motion to suppress, claiming that the police conducted an illegal stop and seizure of him and the car he was driving, and seeking to suppress evidence obtained from the stop. A District Court judge allowed Crabill's motion to suppress, and denied the Commonwealth's motion to reconsider. The Commonwealth appeals, arguing that there was reasonable suspicion for the stop. We agree with the Commonwealth and accordingly, reverse.

Background. 1. The incident.[1] At approximately 9 P.M. on May 14, 2022, Bridgewater police officer Clint Apaza was patrolling in a marked cruiser when he received information from police dispatch regarding a report of erratic driving. Dispatch informed Officer Apaza that a 911 caller, who had identified himself by name, had been driving behind a dark-colored Land Rover with Rhode Island license plate (which he provided), and had seen that the Land Rover "failed to maintain lanes." Thereafter the caller turned left onto another road while the Land Rover continued traveling. Officer Apaza began looking for the Land Rover in the area identified by the caller. While stopped at a red light, Apaza heard the sound of screeching tires. He looked in the direction of the sound and saw a Land Rover, which met the description provided by the caller, enter the parking lot of a laundromat at such high speed that the vehicle's undercarriage came into contact with the pavement, "bottom[ing] out." Officer Apaza then drove into the laundromat's parking lot and, from approximately forty to fifty feet away, saw the Land Rover parked so that it straddled two marked parking spots. The driver of the Land Rover tried to reposition the vehicle in the parking spot, twice, by backing

---

[1] The facts pertaining to the incident are from the District Court judge's findings and rulings on the defendant's motion to suppress.

out and pulling in. Officer Apaza's cruiser was not blocking the Land Rover from exiting the parking lot and its blue lights were not activated. He saw that the Land Rover's license plate number matched the license plate number provided by the caller. He exited his cruiser, approached the vehicle's driver's side, and identified Crabill as the vehicle's driver. Bridgewater police officer Sheehan arrived to assist.

2. The motion to suppress. Crabill filed a motion to suppress the evidence obtained during his interaction with Apaza, claiming that the evidence was the fruit of an illegal stop. Crabill argued that the Bridgewater police did not have the required reasonable suspicion to stop him and order him to exit the vehicle. The judge held a hearing on the defendant's motion in December of 2022. Officer Apaza testified, and the motion judge found his testimony credible on "all material points." The judge nevertheless concluded that the Commonwealth "failed to meet its burden of proof . . . that Bridgewater police had reasonable suspicion to stop the defendant's vehicle," and allowed the defendant's motion to suppress. In February 2023 the Commonwealth filed a motion to reconsider that was denied after a hearing. This interlocutory appeal followed.

Discussion. The Commonwealth argues that Officer Apaza had reasonable suspicion to approach the Land Rover and to make initial inquiries of its driver. In support, the Commonwealth

emphasizes (1) that Officer Apaza relied on a credible tip from an identified caller who provided detailed observations of the Land Rover, and (2) that Officer Apaza's own observations substantially corroborated those of the caller.

"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [the judge's] ultimate findings and conclusions of law.'" Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). We "leave to the [motion] judge the responsibility of determining the weight and credibility to be given . . . testimony presented at the motion hearing." Commonwealth v. Meneus, 476 Mass. 231, 234 (2017), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004). However, we "make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).

As a preliminary matter, we question whether Officer Apaza's actions amounted to a stop or seizure for constitutional purposes. The record was not fully developed as to this issue, and the judge did not make a finding, although both parties surfaced the issue during argument on the motion to suppress. It is clear from the record that the defendant's car was already stopped, in the parking lot, when Officer Apaza approached him.

Police may approach individuals on the street and ask them questions without implicating constitutional concerns, so long as the individual approached is free to decline to answer the questions. Commonwealth v. Harris, 93 Mass. App. Ct. 56, 60 (2018).[2] Apaza's car was parked forty to fifty feet away, not blocking an exit, and his lights were not on. See Commonwealth v. Barros, 435 Mass. 171, 174 (2001) (no stop where, among other indicia, police officer did not impede or restrict defendant's freedom of movement). Although the "Commonwealth bears the burden of demonstrating that the actions of the police officers were within constitutional limits," Meneus, 476 Mass. at 234, citing Commonwealth v. DePeiza, 449 Mass. 367, 369 (2007), the defendant bears the initial burden of showing that a stop or seizure occurred that raises constitutional concerns. See Commonwealth v. Rodriguez, 456 Mass. 578, 590 n.12 (2010), citing Commonwealth v. D'Onofrio, 396 Mass. 711, 714-715 (1986). Here we need not decide if a stop occurred, as we conclude (and

---

[2] "The legal standard [for when police action amounts to a stop for constitutional purposes] is well settled: whether, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.'" Harris, 93 Mass. App. Ct. at 60, quoting Meneus, 476 Mass. at 234-235. While the police may approach individuals on the street and ask them questions, "[i]f the police communicate . . . by word or action . . . that the person they are speaking to is not free to terminate the conversation or to walk away, then . . . reasonable suspicion, at least, is required." Harris, supra.

discuss below) that in any event the police had reasonable suspicion to stop the Land Rover.

Assuming, arguendo, that Officer Apaza's actions did amount to a stop for constitutional purposes, for such a stop to be justified under art. 14 of the Declaration of Rights of the Massachusetts Constitution, the police must have "reasonable, articulable suspicion that a person has committed, is committing, or is about to commit a crime." Commonwealth v. Bostock, 450 Mass. 616, 619 (2008). Reasonable suspicion is a "low bar," lower than probable cause. Commonwealth v. Privette, 491 Mass. 501, 551 (2023) (Wendlandt, J., concurring). See Commonwealth v. Smigliano, 427 Mass. 490, 492 (1998) (reasonable suspicion where motorist's firsthand observations corroborated by police officer's personal knowledge). "To meet the 'reasonable suspicion' standard in this Commonwealth, police action must be 'based on specific, articulable facts and reasonable inferences therefrom' rather than on a 'hunch.'" Commonwealth v. Lyons, 409 Mass. 16, 19 (1990), quoting Commonwealth v. Wren, 391 Mass. 705, 707 (1984). That standard was satisfied here, by the combination of the information from the 911 call and the officer's independent observations.

Starting with the 911 call, the case law requires the Commonwealth to show "both the indicia of reliability of the transmitted information and the particularity of the description

of the motor vehicle." Commonwealth v. Lopes, 455 Mass. 147, 155 (2009). In the context of a reasonable suspicion analysis, "a less rigorous showing . . . is permissible" than is required for probable cause. Id. at 156, quoting Lyons, 409 Mass. at 19. Here, the particularity of the description of the vehicle was plainly satisfactory. The police broadcast relayed the color, make, license plate number, general location, and direction of travel of the Land Rover. See Commonwealth v. Depiero, 473 Mass. 450, 454 (2016); Commonwealth v. Westgate, 101 Mass. App. Ct. 548, 551 (2022). The information in the 911 call also bore sufficient indicia of reliability to justify further police action. The caller's basis of knowledge was clear -- the caller was traveling behind the defendant's car and observing it firsthand. See Commonwealth v. Anderson, 461 Mass. 616, 622 (2012); Commonwealth v. Depina, 456 Mass. 238, 243 (2010). The caller provided a detailed description of the Land Rover and also described the Land Rover's erratic movements, that is, "failure to maintain lanes." And the circumstances also provided sufficient indicia of the caller's veracity. The caller called 911 and provided his name. See Westgate, supra at 550, 552. This was not an anonymous tip, or a confidential informant, but an unsolicited citizen openly describing what they had seen. See id. at 551-552.

Perhaps more importantly, the caller's observations were well corroborated by the observations of Officer Apaza. Apaza went to the area identified by the caller and saw the same Land Rover (the plate matched) driving at a high rate of speed into a parking lot, bottoming out, screeching its tires, and having noticeable difficulty properly parking. This independent police corroboration significantly bolstered the reliability of the information from the 911 caller. See Barros, 435 Mass. at 176.

The reasonable suspicion question is whether these facts provided sufficient ground for a stop and further police inquiry -- whether these were reasonable grounds to believe a crime had been or was being committed, Commonwealth v. Pinto, 476 Mass. 361, 363-364 (2017), -- and we consider that question "in an ordinary, commonsense manner without hypertechnical analysis." Westgate, 101 Mass. App. Ct. at 551, quoting Commonwealth v. Gonzalez, 93 Mass. App. Ct. 6, 11 (2018). Based on the above facts, we have little difficulty concluding that when Officer Apaza approached the defendant's vehicle, he possessed grounds for reasonable suspicion that the defendant had operated his

vehicle negligently and dangerously.[3]  Accordingly, the order allowing the defendant's motion to suppress is reversed.

So ordered.

By the Court (Ditkoff,
Englander & Smyth, JJ.[4]),

*[signature: Paul Little]*

Clerk

Entered:   September 10, 2024.

---

[3] Relying on Privette and its limitations on the so-called "horizontal collective knowledge doctrine," Privette, 491 Mass. at 503, the defendant argues that the Commonwealth cannot rely on the information from the 911 call to justify the stop by Officer Apaza.  The defendant is plainly incorrect, however, insofar as the information from the 911 call was actually transmitted over the police radio by dispatch, and thus known to Apaza at the time of the stop.  Privette dealt with a different problem, where the Commonwealth seeks to aggregate information known by multiple officers because "no one officer . . . [has] sufficient information to support . . . reasonable suspicion." Id. at 508.  Here we rely on no more than was actually known by Apaza -- the make, model, license plate number, and location of the car that had been called in to 911 because of erratic driving.  That information, combined with Apaza's own observations, amounted to reasonable suspicion.

[4] The panelists are listed in order of seniority.